**KENTUCKY–WEST VIRGINIA GAS COMPANY, Appellant,**

v.

**Forrest BURCHETT et al., Appellees.**

Court of Appeals of Kentucky.

April 29, 1966.

C. Kilmer Combs, Boyle, Bilby, Thompson & Shoenhair, Tucson, Ariz., Paul C. Combs, Prestonsburg, for appellant.

W. W. Burchett, Clifford B. Latta, Prestonsburg, for appellee.

DAVIS, Commissioner.

The appellant gas company instituted this action against the appellees asserting that the appellees had wrongfully converted natural gas from the gas company's line. Compensatory and punitive damages were sought. Upon trial before a jury a verdict and judgment adverse to the gas company resulted. The gas company presents two assignments of error on this appeal: (1) the trial court erred in refusing an instruction permitting an award for punitive damages, and (2) certain opinion evidence for appellees was erroneously received.

In 1928 the gas company held a gas lease upon lands of A. O. Burchett in Floyd County. One provision of the lease granted to A. O. Burchett the right to free gas from any productive well on the leasehold. The gas company drilled a producing well on the Burchett property in 1928, to which we shall refer as No. 282, as it was designated on the company's records. Free gas from No. 282 was dispensed to the Burchett users via a one-inch pipe.

Well No. 282 was not a large well, even when first developed. However, it did

afford gas to the Burchett property as well as to the gas company's lines. The company encountered production difficulties with the well within two or three years after its opening. In 1936 the company sold the well to the Burchetts, whose successors are the appellees. The Burchetts (we shall use that terminology to refer to all of the appellees) continued to draw free gas from the one-inch pipe until 1962.

It was in 1962 that the gas company discovered a "tap-on" connection whereby the old one-inch line connected to No. 282 was connected to the gas company's three-inch gathering line. For the gas company the evidence tended to show that the Burchetts had been withdrawing gas from the company's three-inch line—not from old well No. 282—even though the gas came to the Burchetts by way of the old one-inch pipe. It is undisputed that the old well and the three-inch line were so inter-connected that when and if the pressure of the gas in the well exceeded the line pressure in the three-inch line the flow of the gas would be from the well into the three-inch line. From this the appellees contended that in any event they had not obtained gas from the company, but rather that the company had probably received more gas from old No. 282 than they had ever gotten from the three-inch line.

For the gas company there was no direct evidence as to when the "tap-on" had been made nor by whom it was made. The physical condition of the "tap-on"—which was about five to seven feet underground, buried beneath a mound of earth and a "pretty good rock"—indicated that it had been so buried for a long time—"probably from eighteen to twenty years." While no witness undertook to fix the exact age of the "tap-on," it is clear from the evidence that it had existed for several years.

All of the Burchetts disclaimed any knowledge that the "tap-on" existed, except Forrest Burchett. The latter testified that in 1932, while he was serving as a temporary menial servant for the gas company, he was with a gas company crew that installed the "tap-on." He explained that the installation had been made to prevent interruption in the free gas to the Burchetts while the gas company did some repair work on well No. 282. Forrest Burchett declared that he had supposed that the "tap-on" had been disconnected by the gas company shortly after its installation, but said that his crew had not been charged with that responsibility.

Witnesses for the gas company, qualified by training and experience in such matters, testified that No. 282 could not have remained productive of gas in any significant quantity very long after 1936. They were confident that the old well could not have supplied any gas to the Burchetts or into the three-inch line. But there was contrary evidence.

It was shown that in 1936, just a few weeks before the well was sold to the Burchetts the gas company had made a test of it. That test reflected that on April 13, 1936, the well indicated a volume test of 29,000 cubic feet of gas per twenty-four hours on an open flow. The same test report recites that no fluid was found in the well. This latter data is significant since the appellant's witnesses had said that the well had been "drowned" by an excessive amount of water. Another report, under date July 11, 1934, reflected a delivery of 19,000 cubic feet of gas per day against a line pressure of 64 pounds. This report has double significance, in that it was about two years after the "water trouble" with No. 282, and in that the line pressure on the three-inch line admittedly was often below 64 pounds.

■ The case was submitted to the jury upon instructions authorizing *quantum meruit* recovery for the gas company to compensate it for such gas as the jury believed the Burchetts had received from the company's line as opposed to gas from well No. 282. The jury returned its verdict for the Burchetts, and by its verdict found that the Burchetts had not received gas from

the company's lines. It would seem clear, therefore, that a punitive damage instruction would have made no difference, because the jury would have had to find that the Burchetts received some of the company's gas before it could award damages, compensatory or punitive. Hence, if it was erroneous to deny the punitive damage instruction (which we do not decide), it was harmless error and may not serve as a basis for reversal. CR 61.01.

■ Appellant contends that at least the circumstantial evidence warrants the inference that the Burchetts damaged the gas company's pipe by the "tap-on." Thus, it is argued that the punitive damages instruction should have been given, since even a nominal compensatory claim will warrant an accompanying punitive damage claim, citing Louisville & N. R. Co. v. Ritchel, 148 Ky. 701, 147 S.W. 411, 41 L.R.A.,N.S., 958. As noted, the "tap-on" was of long duration; the appellees interposed a general plea of the statute of limitation. The evidence did not warrant a deduction that the "tap-on" had occurred within five years. See KRS 413.120(4) relating to trespass against real or personal property.

■ The appellant admits that appellee Joe Wheeler Burchett possessed the proper training and experience to qualify as an expert witness in matters relating to gas wells. In the course of his testimony the following appears:

"Q 54. Based upon your experience in the gas business and based upon the records furnished by the Kentucky West Virginia Gas Company relative to the output of the well in 1936, in your opinion were there sufficient volumes of gas in that well to provide the domestic needs of all of the defendants in this case up to and including September 28th, 1962?

BY MR. COMBS: (Counsel for Plaintiff)

We object.

BY THE COURT:

Overruled.

A. That's right. Yes, sir. I think there was a sufficient amount of gas and I would like to have it today, dry and making 29,000. I would let them take that line up and disconnect my meter and I think me and my children would know that we could keep warm and have something to eat.

Q 55. Based upon the tie-over and cross-over that has been testified to, assuming varying pressures in the well and in the line, is it just as probable that gas has gone from your well into the line of Kentucky West Virginia Gas Company than it has that it came from their line into your well?

A. I don't think there is any question about it. I don't think there is any question about it (sic) because particularly in your summer months and in the months when the consumers were not using any gas off of that well down there to speak of then that gas had no other place to go only into their line. It had to go over there in the summer months into their lines and for their delivery.

Q 56. Is there any way, Mr. Burchett, that any geologist or any gas man can determine between the year 1936 and the year 1962 when this well, if it did, began to deplete in production?

A. No, sir, I don't think there is any way that can be determined."

The thrust of appellant's argument that the opinion evidence should have been rejected is that the witness did not base his opinion upon all of the records, but merely on the test of April 13, 1936. We are not impressed by this argument, because a fair reading of the testimony of Joe Wheeler Burchett discloses that he gave detailed factual bases for his opinion, and that his opinion was not rested solely on the 1936 report. It must be recalled that the reports

were all reports of the appellant company. We are not able to say that the evidence would have been incompetent even had it rested solely on the 1936 report; after all, that was the report most nearly current with the time the Burchetts acquired well No. 282. We do not perceive that Foster-Milburn v. Chinn, 134 Ky. 424, 120 S.W. 364, 34 L.R.A.,N.S., 1137, or other authorities relied upon by appellant, militate against our view of the admissibility of this evidence.

The judgment is affirmed.