**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1256n.06

**No. 11-5831**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Dec 06, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MADISON CAPITAL COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| S & S SALVAGE, LLC, and RIVER | ) | WESTERN DISTRICT OF KENTUCKY |
| METALS RECYCLING, LLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: MARTIN and DAUGHTREY, Circuit Judges; MALONEY, District Judge.[*]

MARTHA CRAIG DAUGHTREY, Circuit Judge. This appeal arises from an action brought by plaintiff Madison Capital Company, LLC, based on diversity jurisdiction, against defendants S & S Salvage, LLC, and River Metals Recycling, LLC, on claims of conversion of personal property, trespass against personal property, and wrongful withholding. The plaintiff now appeals the district court's denial of a motion to alter, amend, or vacate the court's original order of summary judgment in favor of the defendants on the conversion claim and the court's later *sua sponte* grant of summary judgment in favor of the defendants on the claims of trespass and wrongful withholding. The plaintiff also alleges

---

[*]The Hon. Paul L. Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

error in the district court's rulings on application of the statute of limitations and the exclusion of expert testimony. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2005, Community Trust Bank entered into a loan agreement with Timothy P. Smith and with three mining companies owned by Smith. Pursuant to that agreement, Smith received $1,500,000 to finance completion of a coal plant and to pay off existing debt, and another $350,000 "to support working capital needs." To secure the loans, Smith pledged as collateral much of the equipment and fixed assets of the companies, including a Joy Longwall Mining System that was comprised, in part, of 85 Hemscheidt shields – large, metal, underground roof supports each weighing approximately 15 tons. The parties do not dispute that the bank properly recorded and perfected its security interest in that collateral.

Less than five weeks after obtaining the loan from Community Trust, Smith sought permission from Brett Keene, a commercial loan officer at the bank, to sell portions of the mining equipment to C.W. Mining, a mining company located in Utah. The bank denied the request and informed Smith of that fact. Smith later insisted, however, that he received no such information from the bank and that he thus consummated the sale of mining equipment, minus the Hemscheidt shields, to the Utah concern. Furthermore, Smith claimed, the payments from the Utah company were eventually transferred from that company into Smith's accounts at Community Trust Bank, indicating that the bank was

aware, or at least should have been aware, that the collateral securing the loans was no longer within Smith's possession.

At the same time, Smith was seeking to identify a purchaser for the 85 Hemscheidt shields because those pieces of equipment were being stored on a 20-acre lot that had been transferred to a subsidiary of the Peabody Coal Company that wanted the machinery removed. A suitable purchaser could not be located, however, and Smith eventually agreed to sell the shields for their scrap-metal value. Even though Smith did not recall discussing the sale of the shields/collateral with anyone at Community Trust, he eventually did contract with S & S Salvage to have that company haul the 85 shields from the property and transport them to River Metals Recycling to be scrapped. Once River Metals received the shields, it cut the machinery into pieces of metal smaller than two-feet by four-feet by six-inches and shipped the scrap metal by barge to Nucor Steel Company in Cincinnati, thus effectively destroying the shields as usable mining equipment.

Once River Metals paid S & S Salvage for delivering the machines, S & S Salvage cut a check dated December 27, 2005, to Timothy P. Smith for "(American Mining) scrap shields" in the amount of $87,417.80 and a December 31 check to American Mining in the amount of $96,992.85. Even though those checks were then deposited into Smith's account or the accounts set up for Smith's companies at Community Trust, no one at the bank monitored any of the accounts or otherwise questioned the wire transfers coming into or out of them.

Unfortunately, Smith's sale of the collateral securing his loans did little to alleviate the financial burdens he and his companies were experiencing. As a result, as stated by the district court in one of its memorandum orders issued during the pendency of this litigation:

> [T]he Smith companies took on a new investor in Plaintiff Madison Capital Company, LLC ("Madison"). Madison and the Smith companies eventually formed American Mining & Manufacturing LLC ("AMM, LLC") in June 2006. AMM, LLC assumed the debt from the earlier [Community Trust] loans to the Smith companies and defaulted on that debt sometime in July 2006. After the default, [Community Trust] catalogued the collateral in the field and learned that several pieces were missing, including the Shields. In September 2006, Madison purchased [Community Trust's] position as a secured creditor of the Smith companies by way of an assignment.

*Madison Capital Co., LLC v. S & S Salvage, LLC (Madison II)*, 794 F. Supp.2d 735, 737 (W.D. Ky. 2011).

Eventually, on November 10, 2008, Madison Capital filed suit against S & S Salvage, alleging that S & S Salvage improperly converted to its own use property to which Madison Capital had a superior claim as the assignee of Community Trust Bank. Three months later, on February 13, 2009, the plaintiff filed an amended complaint, adding River Metals as a defendant and alleging claims against each of the two defendants for conversion, wrongful withholding, trespass to personal property, constructive trust, replevin, and negligence. Following a period of discovery, the parties filed cross-motions for summary judgment. Madison Capital initially sought judgment in its favor only on its claims

of conversion and negligence; the defendants requested summary judgment in their favor on all claims asserted by the plaintiff.

On January 19, 2011, the district court issued a memorandum opinion and order that denied Madison Capital's motion for summary judgment in its entirety. *Madison Capital Co., LLC v. S & S Salvage, LLC (Madison I)*, 765 F. Supp.2d 923 (W.D. Ky. 2011). The district court granted the motions of the defendants as they related to the claims of conversion, negligence, replevin, and constructive trust. The court denied summary judgment to the defendants, however, on the plaintiff's causes of action for trespass to personal property and wrongful withholding. *Id.* Madison Capital then filed a timely motion to alter, amend, or vacate portions of that decision, specifically seeking reinstatement of the conversion claim. On June 15, 2011, the district court denied the plaintiff's motion in full and also used that opportunity to rule, *sua sponte*, that the defendants "are entitled to summary judgment as to Plaintiff Madison's remaining trespass and wrongful withholding claims . . . ." *Madison II*, 794 F. Supp.2d at 743. Within the requisite 30-day period, the plaintiff filed a notice of appeal specifying that it sought review of only "the Memorandum Opinion and Order [Doc. 132] entered in this action on the 15th day of June, 2011 (the final judgment) (from an order (describing it))." Consequently, the only issues identified by the plaintiff that are properly before us on appeal are Madison Capital's challenges to the district court's rulings regarding the conversion, trespass, and wrongful-withholding claims.

**DISCUSSION**

Given the nature of the district court's June 15, 2011, memorandum opinion and the limited scope of the review sought by Madison Capital, our analysis of the issues must be filtered through two separate lenses. Because the plaintiff's challenge to the dismissal of its claim of conversion now presents itself only as an attempt to overturn a denial of a motion to alter, amend, or vacate a prior judgment, we will examine the record to determine whether the district court abused its considerable discretion in denying that motion. *See Leisure Caviar, LLC v. U.S. Fish and Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). The remaining challenges that seek reversal or modification of initial decisions regarding the trespass and wrongful-withholding claims are subject to the traditional *de novo* standard of review. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

Furthermore, because this case comes before the court pursuant to the diversity-jurisdiction provisions of 28 U.S.C. § 1332(a), state law governs the substantive issues presented. *See, e.g.*, *Gass v. Marriot Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009). Federal law, however, governs all procedural issues, "including evidentiary rulings made pursuant to the Federal Rules of Evidence." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

**Claim of Conversion**

In its complaint, Madison Capital, as a secured creditor of Timothy P. Smith and Smith's mining companies, alleged conversion causes of action against both S & S Salvage and River Metals. According to the plaintiff's allegations, Smith sold the metal

shields for scrap through business dealings with the two defendants. Because those sales were not authorized by Community Trust Bank, the plaintiff's assignor, and because the shields had been pledged by Smith as collateral for loans he received, the plaintiff contended that the defendants improperly converted the property to their own use and thus were liable to Madison Capital for the plaintiff's loss of use of those pieces of machinery.

To establish the tort of conversion in Kentucky, the plaintiff bears the burden of proving that:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Meade v. Richardson Fuel, Inc.*, 166 S.W.3d 55, 58 (Ky. Ct. App. 2005). The district court did not engage in an analysis of the elements of the tort of conversion in this case, however, because of its determination that Madison Capital failed to initiate its suit within two years of the time the assignor or the assignee should have known of the removal of the machines by the defendants. The district court thus granted summary judgment to the defendants on the conversion claim because it was untimely.

In arguing that the district court abused its discretion in refusing to alter, amend, or vacate that decision, Madison Capital asserts that the district judge erroneously applied a two-year, rather than a five-year, statute of limitations to the plaintiff's conversion claim. This portion of the plaintiff's argument is patently without merit.

It is true that prior to July 15, 1988, Kentucky statutory law provided that "[a]n action for the taking, detaining or injuring of personal property, including an action for specific recovery," could be commenced at any time within *five years* after the cause of action accrued. Ky. Rev. Stat. § 413.120(6) (1985). In 1988, however, the Kentucky legislature deleted subparagraph 6 from section 413.120 and enacted a new section 413.125, which now provides that "[a]n action for the taking, detaining or injuring of personal property, including an action for specific recovery shall be commenced *within two (2) years* from the time the cause of action accrued." Ky. Rev. Stat. § 413.125 (1988) (emphasis added).

The relevant Kentucky statute thus provides in plain language that claims of conversion must now be initiated within two years of the accrual of the cause of action. Madison Capital disingenuously argues, however, that the cases to which the district court cited to support its decision, *Rich & Rich Partnership v. Poetman Records USA, Inc.*, 714 F. Supp.2d 657, 669 (E.D. Ky. 2010), and *Tritschler v. Haire*, No. 5:07-437-JMH, 2009 WL 1515763, at *4 (E.D. Ky. June 1, 2009), were federal cases, not cases originating in the state courts of Kentucky, and thus cannot overrule contrary Kentucky court decisions. The plaintiff then cites three cases from Kentucky's highest state court, *Kentucky-West Virginia*

*Gas Co. v. Burchett*, 402 S.W.2d 421 (Ky. 1966), *Eline v. Commercial Credit Corp.*, 209 S.W.2d 846 (Ky. 1948), and *Patton v. Coldiron*, 281 S.W. 812 (Ky. 1926), to buttress its argument that the five-year statute-of-limitations period still applies in Kentucky conversion actions. Quite obviously, however, each of the cases cited by Madison Capital predates the legislative change in the applicable Kentucky statutes and thus is no longer in concert with the clearly-expressed intent of the Kentucky legislature.

Madison Capital maintains that even if the two-year statute of limitations is held to apply to conversion causes of action in Kentucky, it filed its complaint against the defendants within that applicable time period. In support of that argument, Madison Capital contends that both a demand for return of converted property and a refusal of that demand are elements of the tort of conversion. Thus, if the plaintiff filed its complaint against the defendants within two years of its demand for return of the shields, its conversion claim would survive in the face of any timing challenge. Because Madison Capital maintains that its initial demand letter to S & S Salvage was not sent until July 11, 2008, and its demand letter to River Metals not until January 14, 2009, the plaintiff asserts that its complaints against the defendants filed on November 10, 2008, and February 13, 2009, respectively, were well within even a two-year limitation period.

The Kentucky Court of Appeals discounted exactly such an argument a century ago, however. In *Joseph Goldberger Iron Co. v. Cincinnati Iron & Steel Co.*, 154 S.W. 374, 375 (Ky. 1913), the court recognized "that where an actual conversion is alleged, as here, an

averment of demand and refusal is not required" because even though such a demand and refusal can be evidence of a conversion, "any wrongful exercise or dominion over chattels to the exclusion of the rights of the owner, or a withholding of them from his possession under a claim inconsistent with his rights, constitutes a conversion." Stated somewhat differently:

> The right of action [for conversion] accrues in favor of the owner of goods as soon as they are wrongfully taken from the owner's possession or otherwise wrongfully converted. . . . Where the initial possession is lawful, the statute does not commence to run while the relation of the parties continues unchanged and unrepudiated. *If the holding or possession sounds in tort from the beginning, a demand and refusal are unnecessary for the purpose of determining when the statute of limitations begins to run and, once the statute begins to run, no subsequent demand and refusal can start it afresh*.

90 C.J.S, *Trover and Conversion* § 55 (2012) (footnotes omitted) (emphasis added).

Thus, the lack of a demand for return of the collateral until July 2008 in no way affected the start of the statute-of-limitations period in this case. Moreover, for practical reasons also, adoption of the plaintiff's position on this issue would be counterproductive. As noted by defendant River Metals in its brief, "If Madison's position is taken as true, Madison could wait indefinitely to bring its conversion claim despite its knowledge [that] the Shields were sold . . . because it had not issued a demand for the return and had not received a refusal." The district court, therefore, did not abuse its discretion by refusing to reinstate the plaintiff's conversion cause of action on the grounds [that]b the statute of

limitations did not begin to run until Madison Capital made its written demand for return of the collateral on July 11, 2008.

In a final effort to avoid dismissal of its conversion claim on timeliness grounds, the plaintiff asserts that it did not discover that a possible conversion had occurred until 2008 and that the limitations period for the filing of suit did not begin until that date. Madison Capital thus contends that its November 2008 complaint and its February 2009 amended complaint were filed well within even a two-year statute-of-limitations period. At the very least, the plaintiff argues, by making that allegation, it has identified a material issue of fact concerning the date of discovery of the tort that should have precluded the district court from granting summary judgment to the defendants on the conversion claim.

That assertion by the plaintiff raises the question, however, whether the discovery rule applies at all in Kentucky to claims of conversion of personal property. The district court discussed and applied the discovery rule in its opinions granting summary judgment to the defendants on the conversion claim and denying the plaintiff's motion to alter, amend, or vacate that determination. *See Madison I*, 765 F. Supp.2d at 932-33; *Madison II*, 794 F. Supp.2d at 738-40. On appeal, however, the defendants argue that the district court actually misapplied the law of Kentucky in intimating that filing of the complaint and the amended complaint within two years of the *discovery* of the sale of the shields, rather than within two years of the *actual sale* of the shields, would have allowed Madison

Capital's conversion claim to proceed. The defendants are correct in their assertion in this regard.

The Kentucky Supreme Court has determined that "[a] cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979). That discovery rule, however, "is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010) (footnote omitted). In fact, in *Rockwell International Corp. v. Wilhite*, 143 S.W.3d 604, 613 (Ky. Ct. App. 2003), the Kentucky Court of Appeals noted that its "research has not revealed nor have we been cited to any Kentucky case applying the 'discovery rule' in a property damage action."

In this case, the plaintiff seeks recovery for the disappearance of 85 15-ton pieces of metal machinery that were stored on a 20-acre plot of land. Through the exercise of due diligence, therefore, Community Trust Bank, the issuer of the loans to Smith and the Smith companies that were collateralized by the shields, should have discovered that the shields had been moved without authorization from the property on which they were stored. Moreover, that disappearance should have been discovered through the exercise of due

diligence well before the passage of two years from the sale of the shields in December 2005.

Under established Kentucky law, an assignee like Madison Capital "simply stands in the shoes of the [assignor], subject to all equities and defenses which could have been asserted against the chose in the hands of the assignor at the time of the assignment." *Whayne Supply Co. v. Morgan Constr. Co.*, 440 S.W.2d 779, 782-83 (Ky. 1969). Thus, because the defendants assert that Community Trust should have been aware of the sale of the shields well before the expiration of the two-year filing period for a conversion claim, Madison Capital is also subject to that same requirement.

The plaintiff's conversion cause of action in this case was not based upon latent injury, latent illness, or fraudulent concealment by the defendants. As a result, the district court erred in applying the discovery rule when determining the last date on which Madison Capital could have filed a timely complaint against S & S Salvage and River Metals.

But, even if the discovery rule had been applied appropriately in this matter, the plaintiff could not establish that the district court abused its discretion in ruling that the plaintiff raised no genuine dispute of fact that would indicate that the conversion claim was filed in a timely manner. Madison Capital contends that loan officer Keene was confused during his deposition when he testified that Community Trust knew that the shields were missing more than two years before the plaintiff filed its suit against the defendants. According to the plaintiff, Keene was not shown during his deposition the letter to C.W.

Mining upon which his testimony was based, correspondence that would have clarified that the letter actually discussed the sale of equipment *other than* the Hemscheidt shields, not the disappearance of the shields that led to the initiation of this cause of action. As noted by the district court in its denial of the plaintiff's motion to alter, amend, or vacate, however:

> [E]ven considering Keene's statement that he was confused by the August 23rd letter, Keene's deposition demonstrates that CTB became aware that the Shields were missing sometime between July and September of 2006. Looking to Keene's deposition, there are four separate instances where Keene acknowledges that CTB knew the Shields were missing.

> Before the August 23rd letter was discussed at his deposition, Keene acknowledged that CTB knew that the Shields were missing. Keene was asked:

> Q: Did you ever become aware of the sale of the shields?

> A: Once the loan defaulted and we went out to take a look at everything and we were kind of taking inventory of everything, we saw that they were gone.

> Thereafter, Keene was told of the August 23rd letter to C.W. Mining and was then asked:

> Q: When you learned there was certain equipment missing, what equipment did you learn was missing?

> A: If I recall correctly, I think we sent Mr. Bentley back out there to inventory everything and I think we discovered – I went out there and actually met him, and I don't remember the dates of that. And I think that he pointed out that, you know, that those wasn't [sic] there where he had looked at them before, I guess.

> Q: And when you say those, to what are you referring?

> A: To the shields and the longwall.

> Keene was then asked again about the Smith companies' default:

Q: What was the nature of Mr. Smith or his companies' default? Was it failure to pay?

A: Yes, delinquent payment.

Q: And that happened shortly after the execution of the June '06 documents?

A: Based on the timing of the other documents, yes.

Q: And we already talked about this. That's what precipitated CTB to get out there and look at its collateral?

A: Correct.

Q: Other than the shields we're talking about today and the CW equipment, was there any other missing equipment?

A: Not that I'm aware of.

Lastly, regarding the assignment of the loans to Madison, Keene was asked:

Q: And at the time of this assignment, CTB was aware that the shields were gone?

A: That timeframe – Just going by your letter I was having trouble recollecting the time. Was the letter from Mr. Receski prior to that?

Q: The letter from Mr. Receski was dated August 23 of '06 to CW Mining regarding equipment sold to them.

A: Okay. And what [sic] was the Madison agreement entered?

Q: The Madison agreement [CTB's assignment to Madison] culminated in September of '06.

A: So, yes, we probably were aware of it at that time.

Q: And was CTB aware that in particular the shields that we are here for today were missing?

A: That's my understanding.

*Madison II*, 794 F. Supp.2d at 738-39 (citations to record omitted).

Even more damning for the plaintiff's challenge to the district court's dismissal of its conversion claim on statute-of-limitations grounds is the very language of Community Trust's assignment to Madison Capital. In that document, executed on September 29, 2006, more than two years prior to the initiation of this litigation, the bank memorialized its sale, assignment, conveyance, and transfer to the plaintiff of all rights and interests with respect to bank credit documents involving the loans to Smith and his companies "including but not limited to *any claims associated with the unauthorized sale of the longwall miner in which CTB has a security interest . . . ."* (Emphasis added.) In light of that language in an agreement to which Madison Capital was a party, the plaintiff cannot now legitimately claim that it did not know, or that it should not have known, of its responsibility to ensure that the 85 Hemscheidt shields had not been sold as of September 29, 2006, the date of the agreement.

Because, at the very latest, the plaintiff was aware on that date of the need to investigate the alleged conversion of the shields, any action in regard to that intentional tort must have been filed by September 29, 2008. But, because Madison Capital did not file its complaint against S & S Salvage until November 10, 2008, and against River Metals until February 13, 2009, the district court did not abuse its discretion in denying the plaintiff's motion to alter, amend, or vacate the order of dismissal of the conversion cause of action on statute-of-limitations grounds, even if the discovery rule had been applied properly in this case.

***Sua Sponte* Grant of Summary Judgment on Selected Claims**

In its June 15, 2011, memorandum opinion and order, the district court also seized the opportunity to grant, *sua sponte*, summary judgment to the defendants on Madison Capital's claims of trespass to personal property and wrongful withholding of personal property. Such a decision to grant summary judgment *sua sponte* is reviewed by this court under two distinct standards of review. We review the procedural decision to enter summary judgment *sua sponte* for an abuse of discretion. *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005). The actual summary judgment ruling, however, is reviewed *de novo* under the usual summary judgment standards. *Id.* We first address the procedural issue, and "[i]f we find no abuse of discretion in the district court's procedural decision, we review the decision substantively. If we find a procedural abuse of discretion, we reverse and remand to provide the district court the opportunity to review all of the evidence before making a substantive decision." *Id.*

We will not find that a district court abused its discretion in *sua sponte* granting summary judgment as long as "the losing party was on notice that [it] had to come forward with all of [its] evidence . . . [and had a] reasonable opportunity to respond to all the issues to be considered by the court." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000) (internal quotation

marks and citations omitted). Madison Capital contends, however, that it had no notice of the district court's intent to issue an order of summary judgment on the plaintiff's trespass and wrongful-withholding claims because, in the court's January 19 memorandum opinion, the district judge specifically denied summary judgment to the defendants on those two causes of action.

Nevertheless, the district court clearly did not abuse its discretion in determining later that the plaintiff had notice and a reasonable opportunity to address the propriety of a summary-judgment ruling on the trespass and wrongful-withholding claims. Without question, Madison Capital was aware that the trespass claim was being considered by the district court in conjunction with its motion to alter, amend, or vacate the January 19 ruling of the court. In fact, in that motion, Madison Capital itself argued that it had "satisfied the elements of its trespass claim." The plaintiff, after arguing the merits of that cause of action, cannot now be heard to complain that the district court chose to address the issue as well. The district judge clearly did not abuse his discretion in issuing a *sua sponte* ruling on Madison Capital's claim of trespass to personal property.

A similar discussion of the merits of the wrongful-withholding claim did not occur in the context of arguing for or against the efficacy of the plaintiff's motion to alter, amend, or vacate the January 19, 2011, opinion and order. Madison Capital still cannot legitimately claim, however, that it did not have sufficient opportunity to address the legal theories upon which the district court rested its decision to grant the defendants summary

judgment on that cause of action. In its January 19 decision, the district court clearly explained that when, as in this case, the alleged wrong "occurred by way of a wrongful taking at the outset," *Madison I*, 765 F. Supp.2d at 932, a claim for conversion is the proper way to challenge the deprivation of private property and that "demand and refusal need not be proved." *Id.* By so concluding, the district court served notice of its determination that any deprivation of personal property in this case occurred at the outset of the parties' interactions and thus did not involve the legitimate initial possession by the defendants that would support a claim for a subsequent wrongful withholding. Because the plaintiff thus had sufficient opportunity to contest the district court ruling that the elements of a conversion claim had been suggested by the facts of the case, the district judge did not abuse his discretion in *sua sponte* choosing to subject the wrongful-withholding claim to summary-judgment analysis.

Madison Capital nevertheless argues before this court that the district court's grant of summary judgment on its trespass and wrongful-withholding claims prevented the plaintiff from advancing alternative arguments regarding the liability of the defendants. However, the only restraint on the advancement of alternative theories by the plaintiff was Madison Capital's own failure to allege facts that described anything other than a claim of conversion. To the extent that the plaintiff thus failed to state claims for trespass and wrongful withholding by asserting that the only interference by the defendants with the shields was both total and completely illegal, the district court did not err in granting summary judgment to the defendants on those claims.

Having determined that no such abuse of discretion has been shown in this case, we next review the district court's order *de novo,* utilizing the same standards employed by the district judge. *See Ciminillo*, 434 F.3d at 464. We will affirm a grant of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We will find that a genuine dispute of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. A non-moving party cannot withstand summary judgment, however, by introduction of a "mere scintilla" of evidence in its favor. *See Ciminillo*, 434 F.3d at 464.

**Claim of Trespass to Personal Property**

In challenging the district court's summary-judgment decision on its claim of trespass to personal property, Madison Capital asserts that because the statute of limitations for initiating such a trespass action is five years from the accrual of the injury, *see* Ky. Rev. Stat. § 413.120(4), the district court erred in granting summary judgment to the defendants based upon the expiration of a two-year statute-of-limitations period. For two primary reasons, one substantive and the other policy-driven, the mere act of denominating its cause of action as trespass, rather than conversion, does not save the plaintiff from the adverse consequences of its delay in bringing this suit.

First, the substantive difference between the torts of conversion and trespass to personal property precludes Madison Capital from relying upon the five-year limitation on filing that is mentioned in Ky. Rev. Stat. § 413.120(4) when asserting its claims in this case. As recognized by the district court in its July 15 memorandum opinion, "[a] trespass to a chattel may be committed by intentionally dispossessing another of the chattel or using or intermeddling with a chattel in the possession of another." *Caldwell's Kentucky Form Book (5th ed.)*, § 126.00 (2011). *See Madison II*, 794 F. Supp.2d at 740. However, because conversion is also "an intentional exercise of dominion or control over a chattel," *Restatement (Second) of Torts*, § 222A (1965), commentators have been forced to draw "a distinction between mere trespass interfering with possession of a chattel, and a conversion, which must involve some exercise of the defendant's hostile dominion or control over it." *Id.*, § 222A at cmt. a. In differentiating between the two concepts, the comments in the *Restatement (Second) of Torts* note:

> In trespass the plaintiff may recover for the diminished value of his chattel because of any damage to it, or for the damage to his interest in its possession or use. Usually, although not necessarily, such damages are less than the full value of the chattel itself. In conversion the measure of damages is the full value of the chattel, at the time and place of the tort. . . . Conversion is . . . properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value.

*Id.*, § 222A at cmt. c.

The same distinctions have been recognized in Kentucky. For instance, as stated in 13 *Kentucky Practice Series Tort Law* § 7:1 (2011), "[t]respass to chattels involves relatively minor damages or deprivation, while conversion involves consequences which justify the right of the plaintiff to recover the full value of the personal property affected." Thus, "[if] the interference with the rights of the possessor is serious enough, it will constitute conversion." *Caldwell's Kentucky Form Book (5th ed.)* § 126.00 (2011). Stated differently, "if return of the chattel is not possible, or the interference with its use has been so serious and significant that it is just to require the defendant to pay the full value of the chattel, then an action for conversion should be brought." *Id.*

Clearly, the complete dismantling and re-forming of the 15-ton shields into pieces of scrap metal no larger than two-feet by four-feet by six-inches constitutes a serious interference with, and a total deprivation of, the rights of the owner of the shields. Any claim for such interference, therefore, must have been brought as a claim for conversion that is subject to the two-year statute of limitations contained in section 413.125 of the Kentucky Revised Statutes. Thus, for substantive reasons, the district court correctly granted summary judgment to the defendants on Madison Capital's trespass-to-personal-property claims because those claims were not filed as conversion claims within two years of the accrual of the causes of action.

Furthermore, legitimate policy reasons support application of the two-year statute-of-limitations period to the proffered trespass causes of action. As previously stated, an act

of conversion entails a more complete, a more prolonged, a more serious deprivation of the owner's chattel than does a mere trespass. "Clearly, KRS 413.125 [and its two-year statute of limitation] applies to a conversion since there is no specific language of conversion in KRS 413.120(4). It would be illogical to apply a two-year statute of limitation to conversion, but a five-year statute to trespass to chattels, a tort of lesser culpability." 13 *Ky. Prac. Series Tort Law* § 7:1 (footnote omitted).

**Claim of Wrongful Withholding**

The principle of law is well-established that "[w]e may not construe a statute in a manner that renders part of the law superfluous." *United States v. Perry*, 360 F.3d 519, 537 (6th Cir. 2004). In other words, "[i]t is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word." *Wash. Market Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879). So as not to render either the provisions of Ky. Rev. Stat. § 413.125 (setting a two-year period for bringing claims of conversion) or § 413.120(5) (setting a five-year period for bringing claims of wrongful withholding of personal property) meaningless, it is thus essential that the concepts of conversion and wrongful withholding be analyzed differently. Although Madison Capital purports to maintain such a distinction between the two torts, in reality, the plaintiff's pleadings in this matter blur any substantive difference between the two concepts while still seeking to benefit from different procedural requirements.

As explained in the *Restatement (Second) of Torts*, § 222A cmt. a, "conversion" has come to be regarded "as an exercise of the defendant's dominion or control over the chattel, as distinguished from a mere interference with the chattel itself, or with the possession of it." Thus, when personal property is alleged to have been taken and destroyed, and when that taking is also improper at the outset, a cause of action for conversion arises. On the other hand, when a defendant initially holds or possesses property legally but later fails to turn the property over to its rightful owner upon demand, a claim for wrongful withholding is proper. The few published Kentucky cases that involve assertions of wrongful withholding illustrate this differentiation.

In *Crowder v. Barnes Automobile Co.*, 218 S.W.2d 679 (Ky. 1949), for example, the plaintiff "sought to recover damages for the alleged wrongful withholding of a new Ford automobile" by a car dealer who initially had legal title to the vehicle. *Id.* The Kentucky Court of Appeals concluded, however, that no withholding had occurred because "the purchaser acquired no right, title or interest in the property until it was delivered to him *and* either the full purchase price paid in cash or a satisfactory deferred payment plan entered into." *Id.* at 680 (emphasis added). Absent the required payment or payment plan, therefore, Crowder never suffered any deprivation of *his* property at all.

Likewise, the plaintiffs in *Maximum Machine Co. v. City of Shepherdsville*, 17 S.W.3d 890 (Ky. 2000), suffered no serious deprivation of or damage to personal property. In that case, companies that had paid a business license tax to the City of Shepherdsville

in 1990, 1991, 1992, and 1993 sued for a refund of those payments after a court declared the ordinance requiring the tax payment "void due to procedural infirmities." *Id.* at 891. The Kentucky Supreme Court concluded that the unique facts of that case called for the application of the five-year statute of limitations found in sesction 413.120(5) for actions for damages for withholding of personal property. No party asserted that any conversion had occurred, in part because the initial collection of the taxes had not yet been determined to be illegal. Thus, the choice before the Kentucky courts was not between a two-year conversion statute of limitations and a longer wrongful-withholding statute of limitations, but rather between the five-year limitations period of Ky. Rev. Stat. § 413.120(5) and a two-year statute of limitations on claims for refunds of *ad valorem* taxes or for taxes later held to be unconstitutional. *See* Ky. Rev. Stat. § 134.590(3). Because the business license taxes at issue in the case were not *ad valorem* taxes, and because the ordinance had been invalidated due to procedural infirmities, not its unconstitutional nature, the shorter time period for filing suit was not applicable.

Madison Capital's wrongful-withholding claim in this case, by contrast, does not allege that the defendants' possession of the 85 shields was ever legal or proper. To the contrary, the plaintiff asserts that the defendants' possession was illegal from the outset and that S & S Salvage and River Metals exercised such complete control and dominion over the shields that the only remedy that could compensate the plaintiff for its loss would be payment of the full value of the property at the time of the taking. Such an assertion is unquestionably a claim for conversion of personal property, not a claim for wrongful

withholding by the defendants of property once possessed with authorization. The district court was thus correct to grant summary judgment to the defendants and to conclude that the alleged wrongful-withholding claim in this matter was really nothing but a conversion cause of action under a different name.[1]

**Exclusion of Testimony of Proffered Expert Witnesses**

In a final appellate challenge, Madison Capital maintains that the district court erred in excluding the testimony of two witnesses offered by the plaintiff to testify regarding the scrap metal value of the shields. A brief review of the procedural history of this litigation shows, however, that this issue is not properly before the court for review at this time.

On January 19, 2011, the district court issued its decision in *Madison I* that granted the defendants summary judgment on a number of the causes of action identified by the plaintiff. That memorandum opinion and order also denied the defendants summary judgment on the trespass and wrongful-withholding claims, reserving further action on those alleged bases for relief for a future date. That same day, January 19, the district court issued a second memorandum opinion and order granting the defendants' motion to exclude the testimony of two of Madison Capital's "expert witnesses." *See Madison Capital*

---

[1] Despite the district court's grant of summary judgment to the defendants disposing of all the plaintiff's claims, S & S Salvage and River Metals still contend that the district court erred in failing to rule favorably upon their request to apply the doctrine of laches to the plaintiff's causes of action. Obviously, that allegation of error has been rendered moot by our determination that the district court did not err in granting summary judgment in favor of the defendants on all claims asserted by the plaintiff in both its complaint and its amended complaint.

Co., LLC v. S & S Salvage, LLC (Madison III), No. 4:08-CV-00134-JHM, 2011 WL 195639 (W.D. Ky. Jan. 19, 2011).

Three weeks later, Madison Capital filed a motion to alter, amend, or vacate portions of Madison I. Specifically, the plaintiff sought "to alter, amend or vacate the portion of the Court's January 19, 2011 order granting defendants' motion for summary judgment as to Madison's claim for conversion [and moved] the Court to clarify its Order, and to narrow the scope of trial by holding the Defendants liable for trespass . . . ." (Emphasis added.) On June 15, 2011, in docket entry 132, the district court denied the motion to alter, amend, or vacate and further granted summary judgment, sua sponte, on the plaintiff's trespass and wrongful-withholding claims.

On July 8, 2011, Madison Capital filed a timely notice of appeal in which the plaintiff designated only "the Memorandum Opinion and Order [Doc. 132] (the final judgment) (from an order (describing it)) entered in this action on the 15th day of June, 2011," as a basis of appeal. As described above, that memorandum opinion and order in no way involved or addressed the issue regarding expert testimony that the plaintiff now seeks to place before this panel. Pursuant to the provisions of Federal Rule of Appellate Procedure 3(c)(1)(B), a notice of appeal must "designate the judgment, order, or part thereof being appealed." Because the order excluding the testimony of two of the plaintiff's witnesses was not included in Madison Capital's notice of appeal, any allegation of error in that ruling is not properly before us at this time. See, e.g., Crawford v. Roane, 53 F.3d 750, 752 (6th

Cir. 1995) (holding that although "appeal from a final judgment draws into question all prior non-final rulings and orders," when a party "chooses to designate specific determinations in its notice of appeal, only those determinations may be raised on appeal").

Furthermore, because the plaintiff's suit against S & S Salvage and River Metals also engendered certain as-yet-unresolved cross-claims and third-party claims between the defendants and between S & S Salvage and Timothy P. Smith, Madison Capital filed a motion in the district court "to certify the June 15, 2011 Memorandum Opinion and Order [Doc. 132] as a final, appealable judgment pursuant to Fed. R. Civ. P. 54(b)." The district court granted that motion, certifying only "that its Memorandum, Opinion and Order dated June 15, 2011, is a final and appealable order, and that there is no just reason to delay appellate review." *Madison Capital Co., LLC v. S & S Salvage, LLC (Madison IV)*, No. 4:08-CV-00134-JHM, 2011 WL 3678796, at *2 (W.D. Ky. Aug. 22, 2011). Again, in light of that order, only the conversion, trespass, and wrongful-withholding decisions included in the June 15 memorandum opinion are properly before us at this time. There is, therefore, neither need nor jurisdiction to address in this appeal the plaintiff's claim regarding the exclusion of alleged expert witnesses.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.