The **LOUISVILLE TRUST COMPANY**, **Ancillary Administrator of the Estate of William Virgil Sampson, Deceased, and Queen Products Company, Inc., Movants,**

v.

**JOHNS–MANVILLE PRODUCTS CORPORATION, Respondent.**

Supreme Court of Kentucky.

April 10, 1979.

Allen Schmitt, James M. Graves, Boehl, Stopher, Graves & Deindoerfer, Louisville, Thomas W. Henderson, Pittsburgh, Pa., for movants.

Lively M. Wilson, Stites, McElwain & Fowler, Louisville, for respondent.

REED, Justice.

The issue presented is whether this court should extend the so-called "discovery" rule applicable to malpractice cases in this jurisdiction to actions for personal injury from a latent disease caused by exposure to a harmful substance so far as computing the proper commencement date of the statute of limitations is concerned.

I

William Sampson died from malignant mesothelomia, a rare type of lung cancer, caused by breathing asbestos dust and fibers. Sampson had been an asbestos worker at Queen Products Company from 1957 to 1967 during which years he was exposed to asbestos fiber dust. In 1962 Queen Products became the exclusive agent of Johns-Manville and fabricated asbestos boards purchased from Johns-Manville, the manufacturer. From 1962 until he voluntarily terminated his employment with Queen in October 1967, he was exposed to asbestos fiber dust which resulted from sawing and planing Johns-Manville asbestos boards.

From October 1967 until his death in February, 1972, Sampson was not exposed to asbestos dust. He did not become ill until 1971 and lung cancer was not diagnosed until August 26, 1971. Sampson was told of the diagnosis in September 1971.

He was again hospitalized on February 5, 1972 and died later that day. Louisville Trust was appointed his administrator on August 24, 1972 and an action for personal injuries and wrongful death was commenced August 25, 1972.

The administrator's suit sought recovery from Johns-Manville on a theory of products liability arising from an alleged failure to adequately warn of known dangers associated with the inhalation of asbestos dust. Queen Products intervened as a plaintiff to secure reimbursement for workmen's compensation benefits paid to Sampson. The suit was tried. The jury verdict was in favor of Sampson's estate. The jury awarded $10,000 for pain and suffering and $80,000 as damages for wrongful death. From a judgment in conformity with this

verdict, Johns-Manville appealed to the Court of Appeals. Although several grounds of error were asserted, the Court of Appeals found it necessary to deal with only one. It held that our decision in *Columbus Mining Co. v. Walker,* Ky., 271 S.W.2d 276 (1954), required the dismissal of the action as barred by the applicable one-year statute of limitations.[1] Sampson's estate moved this court for discretionary review which we granted. Our review is limited, of course, to the limitations issue which is the only assignment of error discussed and decided by the Court of Appeals.[2]

## II

■ The Court of Appeals had no alternative but to decide the case as it did. *Columbus Mining Co. v. Walker, supra,* is directly controlling unless we decide to overrule it. The Court of Appeals noted:

"The disease which caused Sampson's death is one which develops only after long exposure and he did not and could not have known of his illness until a year from the date of his last exposure had already passed. The logic of the decisions cited by [Sampson's estate] is therefore appealing."

The opinion concluded:

"In our opinion the resolution of the issue presented here is a matter of policy. It is the function of this court to follow the decisions of the highest court of the state and not to attempt to make new policy by overruling those decisions. This is especially true when the policy established by the highest court is of such recent vintage."

We agree that these statements correctly reflect the proper role of the Court of Appeals in our judicial system. We have concluded to extend the discovery rule of our medical malpractice cases to tort actions for

injury resulting from a latent disease caused by exposure to a harmful substance.

## III

*Columbis Mining Co. v. Walker, supra,* was decided by this court in 1954. In that case a worker contract silicosis which was not diagnosed until four years after his last exposure to silica dust. The worker could not be compensated under the Workmen's Compensation Act then in effect because neither he nor his employer had accepted coverage of the Act. He sued his employer in a common law action for failure to provide a safe place to work. This court held that

"... since the basis of the action is the employer's wrongful conduct in not maintaining a safe place of employment, the commencement of the running of the statute should not be delayed beyond the date upon which the employee was last exposed. To hold otherwise would promote the prosecution of stale claims against the intent and spirit of statutes of limitations." *Id.* at 278.

This disposition was not in accord with the analysis adopted by the United States Supreme Court in *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Urie involved a locomotive fireman who contracted silicosis from inhalation of silica dust over a thirty-year period. The defendant argued that the action was barred by the three-year statute of limitations prescribed in the Federal Employers' Liability Act. In considering the limitations issue the Supreme Court held that the cause of action did not accrue until the plaintiff either knew or had reason to know of the disease. The adoption of any other rule, the court stated

"would mean that at some past moment in time, unknown and inherently unknow-

---

1. KRS 413.140(1).

2. The three-judge panel was unanimous in holding that the recovery for personal injuries was barred by limitations. One judge, however, dissented from that part of the decision which operated to deny recovery for wrongful

death as also barred by limitations. The dissenting judge concluded that the claim for wrongful death was timely in his view because it was filed within one year from the date of death which was when the cause of action accrued.

able even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of the lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute a waiver of his right to compensation at the ultimate day of discovery and disability." *Id.* 337 U.S. at 169, 69 S.Ct. at 1024, 93 L.Ed. at 1292.

The thrust of Urie is that when an injury does not manifest itself immediately the cause of action should accrue not when the injury was initially inflicted, but when the plaintiff knew or should have known that he had been injured by the conduct of the tortfeasor. An action accrues only at the time the plaintiff suffers an actionable wrong. In *Saylor v. Hall,* Ky., 497 S.W.2d 218, 225 (1973) we stated: "A cause of action does not exist until the conduct causes injury that produces loss or damage."

We followed the rationale just stated in concluding to reject previous case law and to apply the so-called "discovery" rule to actions for medical malpractice when in 1970 we decided *Tomlinson v. Siehl,* Ky., 459 S.W.2d 166, and in 1971 when we decided *Hackworth v. Hart,* Ky., 474 S.W.2d 377. These cases announced a discovery rule in medical malpractice cases in these terms: An action for medical malpractice accrues, and begins the running of the limitations period "on the date of the discovery of the injury, or from the date it should, in light of ordinary care and diligence, have been discovered." *Hackworth v. Hart, supra,* at 379 (italics omitted).

The requirement of discovery of injury by a plaintiff is no stranger to Kentucky law. "It has long been a part of our workmen's compensation law, and it is applied, subject to a ten-year limitations period, to actions based on fraud or mistake." [3]

*Caudill v. Arnett,* Ky., 481 S.W.2d 668 (1972) contains language which the Court of Appeals noted in its opinion. In *Caudill* the plaintiff was injured when a school bus in which he was passenger left the highway and overturned. Although his injuries appeared to be minor, from that time on he complained of continuous chest and back pain. Plaintiff was a minor at the time of the accident and failed to commence his action within the required time after he reached his majority. He contended that the rule of *Tomlinson* should be applied so that limitations did not start to run until the diagnosis derived from an exploratory operation was communicated to him. We held: "The appellant's cause of action came into existence or accrued on the day he was injured in the school-bus [sic] accident, and limitations began to run from that date even though he was not made fully aware of the extent of his injury until several years later." [4] The opinion went on to add this gratuitous statement:

> "Appellant insists that the rule of *Tomlinson v. Siehl* [citation omitted] is controlling and, therefore, the date of the exploratory operation is the date of discovery of the cause of action from which event limitations begin to run. The rule of *Tomlinson* is an exception to the general rule with its limitation being limited to malpractice cases. [5]

The extent of the application of *Tomlinson* was irrelevant to the decision. It was undisputed that on the occasion of the accident plaintiff knew that he was injured as a result of the conduct of the defendant's employee, the school bus driver. Plaintiff's lack of knowledge of the extent of his injury does not toll a statute of limitations to which the discovery rule is applied. We, therefore, regard this statement in *Caudill* concerning the extent of applicability of *Tomlinson* as obiter dictum.

## IV

We see no compelling policy-based reason for a distinction between when a plaintiff

---

**3.** Cooper, *Kentucky Law Survey—Civil Procedure,* 66 Ky.L.J. 531, 534–35 (1978) (footnotes omitted).

**4.** *Caudill v. Arnett,* Ky., 481 S.W.2d 668, 669 (1972).

**5.** *Id.* at 670.

injured by medical malpractice and when a plaintiff injured by latent disease caused by exposure to a harmful substance must bring a lawsuit or be barred by limitations.

Our own review of foreign authorities convinces us that this statement in Birnbaum's article in Forum[6] is correct: "The clear trend, in most jurisdictions in cases dealing with drugs, chemicals and asbestos has been to apply some variation of the discovery rule which is based on equitable considerations. Courts have felt that the injured party should be allowed to have his day in court when his injury was of an inherently unknowable nature."[7]

The New Hampshire Supreme Court in an exhaustive opinion rendered in 1977[8] explained its concept of the discovery rule's application to a case where the plaintiff ingested an oral contraceptive which caused hemorrhages in her optic nerves causing her to become legally blind. In this diversity action the federal court asked the Supreme Court of New Hampshire whether its discovery rule applicable to medical malpractice based on leaving a foreign object in a patient's body should apply to a case where injury was caused by a drug and the plaintiff, exercising reasonable diligence, did not learn of the possible causal connection between the drug and her injury until two or three years after her injury occurred.

The New Hampshire court replied that the discovery rule did apply to this case based on a products liability theory. The court said:

"In a case, such as the one before us, in which the injury and the discovery of the causal relationship do not occur simultaneously, it is important to articulate exactly what the discovery rule means. *We believe that the proper formulation of the rule and the one that will cause the least*

*confusion is the one adopted by the majority of courts: A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct."*[9]

We think that declaration is a workable and just application of our *Tomlinson* rule.[10] We find support that this is the just result in a products liability case involving exposure to asbestos in *Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155 (8th Cir. 1975) (construing Minnesota law) and in *Harig v. Johns-Manville Products Corp.*, 284 Md. 70, 394 A.2d 299 (1978) (certifying the law of Maryland in a diversity action).

We therefore overrule *Columbus Mining Co. v. Walker,* Ky., 271 S.W.2d 276 (1954) and extend the *Tomlinson* rule as explicated herein to tort actions for injury from latent disease caused by exposure to a harmful substance whether the action be based on negligence or on a products liability theory. As there is no dispute concerning the operative facts concerning the time elements involved, we conclude as a matter of law that the Sampson estate's action was timely filed and not barred by limitations.

### V

Although *Johns-Manville* concedes that the component claim for recovery for wrongful death was filed within one year from the date of death as required by statute, it asserts that it is a prerequisite to a wrongful death action that the decedent would have been able to sue for his personal injuries had he lived. (brief for respondent p. 16). We need not either consider or decide the contention because it is premised on the proposition that the decedent's claim for personal injuries was barred by limita-

---

6. Birnbaum, *"First Breath's" Last Gasp: The Discovery Rule in Products Liability Cases,* 13 FORUM 279 (1977).

7. *Id.* at 285 (footnote omitted).

8. *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170.

9. *Id.* 371 A.2d at 174 (italics supplied).

10. *Cf. Hall v. Musgrave,* 517 F.2d 1163 (6th Cir. 1975) (construing the Ky. *Tomlinson* rule in a diversity action).

502

tions at the time of his death. Our decision that it was not so barred renders *Johns-Manville's* contention in this respect purely academic.

### VI

We intimate no opinion on other claims of error by *Johns-Manville.* Those assignments of error properly presented will be considered by the Court of Appeals on remand.

The decision of the Court of Appeals on the issue of limitations is reversed, and the cause is remanded to the Court of Appeals for its consideration of such other assignments of error as are properly presented.

All concur.