Geraldine CARROLL, Appellant,

v.

OWENS–CORNING FIBERGLAS CORP.; Owens–Illinois Glass Co.; Garlock, Inc.; Fibreboard Corp.; Foster Wheeler Energy Corp.; The Anchor Packing Co., Appellees.

No. 99–SC–0740–CL.

Supreme Court of Kentucky.

Aug. 24, 2000.

As Modified Aug. 24, 2000.

Modified on Denial of Rehearing March 22, 2001.

Kenneth L. Sales, Joseph D. Satterly, Kathleen M. Flynn, Segal, Sales, Stewart, Cutler & Tillman, Louisville, Marc Weingarten, Greitzer & Locks, Philadelphia, PA, for Appellants.

Cathleen Charters Palmer, O'Bryan, Brown & Toner, John L. Dotson, Louisville, Karin S. Schwartz, Debevoise & Plimpton, New York, NY, John K. Gordinier, Pedley, Ross, Zielke, Gordinier & Porter, Louisville, for Appellees.

## CERTIFICATION OF THE LAW

GRAVES, Justice.

Appellant, Geraldine Carroll, widow of James Carroll, brought this action for personal injuries, wrongful death and loss of consortium. James Carroll spent thirty years exposed to asbestos, much of which Appellees manufactured, while working as a plumber/steamfitter. In December 1983, Carroll was diagnosed with a mild, non-progressive form of asbestosis, a chronic

lung inflammation caused by prolonged inhalation of asbestos particles. Carroll's condition was not disabling and he chose not to sue at that time. Eight years later, however, Carroll was diagnosed with lung cancer and filed suit against Appellees in United States District Court within five months of the diagnosis. Because the lung cancer was a distinct and separate disease from the asbestosis, Carroll argued his claim was filed within the one-year statute of limitations for personal injury cases, as required by KRS 413.140(1)(a). Following Carroll's death from lung cancer in December 1991, Appellant added a wrongful death claim.

The United States District Court granted partial summary judgment in favor of Appellees, holding that the statute of limitations for both diseases began at the time of the 1983 asbestosis diagnosis, thus time-barring the personal injury and loss of consortium claims. The court cited to the discovery rule set forth in *Louisville Trust Co. v. Johns–Manville Prods. Co.*, Ky., 580 S.W.2d 497, 500 (1979), which provides: "When an injury does not manifest itself immediately, the cause of action should accrue not when the injury was initially inflicted, but when the plaintiff knew or should have known that he had been injured by the conduct of the tortfeasor." The decedent in that case, William Sampson, fell within the statute of limitations by the Court's holding that it began to run at the discovery of his mesothelioma, almost three years after his initial exposure to asbestos. Concerning the extent of the injury, however, the *Louisville Trust* Court held that "lack of knowledge of the extent of his injury does not toll a statute of limitation to which the discovery rule is applied." This rule also was applied in *Caudill v. Arnett*, Ky., 481 S.W.2d 668 (1972), to bar a victim from suing for greater injury years after a school bus accident, when he was on notice almost immediately that there was at least minor injury caused by the same accident. Similarly, the United States District Court in this case used the *Caudill* rule prohibiting

splitting causes of action to hold that in single-cause-of-action rule states, all causes of action, including future ones, arising out of a single transaction must be brought in a single proceeding.

An appeal to the Sixth Circuit Court of Appeals resulted in a request for certification by this Court. After reviewing the record and hearing oral argument, we conclude that while Kentucky has never been a "two disease" state (which would allow for recovery following the discovery of each disease), because asbestosis and lung cancer are separate and distinct diseases, both arising from asbestos exposure, Kentucky's one-year statute of limitations should not bar Appellant's cancer claim simply because Carroll did not pursue a potential claim for the fear or the enhanced risk of developing cancer following an asbestosis diagnosis seven years earlier. Splitting causes of action inherently implies more than one action; nothing is split when only one action is brought. While Carroll's claim for asbestosis is time-barred, Appellant concedes that such claim was waived, as was any claim for the increased risk or fear of further asbestosis disease, as would otherwise be allowed by *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984). This case does not turn so much on the rule against splitting causes of action, but more on pinpointing when a cause of action accrues in cases involving multiple diseases brought on by the same toxic agent.

Since the discovery of its toxicity, asbestos has been found to be the cause of several impairments, mostly respiratory. Some, such as pleural plaques and thickening, are not debilitating. Others are potentially fatal, such as lung cancer and the rarer mesothelioma. Asbestosis can cause impairment, or as is obvious from Carroll's failure to bring suit after diagnosis, it can be a milder disease. What is important to note is that these diseases are not causes or prerequisites for each other. One does not flow from the other. David E. Lilien-

feld, "The Silence: The Asbestos Industry and Early Occupational Cancer Research: A Case Study," 81 *Am. J. Pub. Health* 791 (1991). When Carroll was diagnosed with asbestosis, he did not necessarily know, nor should he have known that he would also eventually develop lung cancer. Only actual knowledge or knowledge of the probability of disease triggers the statute of limitations under a *Louisville Trust, supra,* analysis.

Appellees urge the adoption of *Farmer's Bank and Trust Co. v. Rice,* Ky., 674 S.W.2d 510 (1984), for the proposition that it is the discovery of the alleged wrongful act (i.e., the exposure to asbestos) and not its extent that determines the time of accrual. In *Farmer's Bank,* the plaintiff was misdiagnosed with mastitis and underwent surgery, radiation and chemotherapy until tests indicated she was in remission. She thereafter learned she had cancer of the brain and lungs, and filed suit almost two years after the original misdiagnosis. The trial court rejected the plaintiff's argument that a reappearance of cancer triggered a new statute of limitations, and rather held that the discovery was not new and did not revive the cause of action.

Similarly, Appellees rely upon *Capital Holding Corp. v. Bailey,* Ky., 873 S.W.2d 187 (1994), to suggest that this area of the law is settled, and that Carroll was required to have brought suit immediately following the discovery of asbestosis and include in that suit any risk or fear of additional harm. In *Capital Holding Corp.,* this Court examined a Florida decision, *Eagle–Picher Ind., Inc. v. Cox,* 481 So.2d 517 (Fla.App.1985), in which the plaintiff sued for asbestosis, fear of contracting cancer and the enhanced risk of cancer. In allowing the "fear" claim, but disallowing a claim for "enhanced risk," the Florida court noted that the plaintiff's right to later sue for cancer was reserved. *Id.* at 529.

In *Capital Holding Corp.,* however, we pronounced the Florida rule "unwieldy and unnecessary under *Davis v. Graviss* which

permits the finder of fact to evaluate and assess damages for the enhanced risk of contracting cancer...." *Capital Holding Corp., supra,* at 195. Under *Capital Holding Corp.,* suits for asbestos-related claims in Kentucky may be brought only once and may encompass all current or future damages, because a claim made early can take into account damages which may occur in the future. *Id.* at 195. However, the decision is silent about the procedure to be followed when the plaintiff is not sufficiently impaired to warrant suing for the earlier illness. Thus, despite Appellee's contentions to the contrary, *Capital Holding Corp.* clearly permits Appellant to bring a single cause of action at this point. Appellee's counsel argued for a two-disease rule, and for elimination of intermediate fear or enhanced-risk claims. Such a rule, however, would not only allow this Appellant's suit to proceed, but would have permitted it even had Carroll sued for asbestosis in 1983.

While Kentucky has a policy of requiring all causes of action to be settled at one time, therefore encouraging recovery based on fear of further complications, this policy is not particularly logical or feasible in toxic substance cases, particularly those concerned with asbestos, which causes diseases with an extended latency period of as much as forty years. W. Nicholson et al., "Occupational Exposure to Asbestos: Population at Risk and Projected Mortality," 1980–2030, 3 *Amer. J. Indust. Med.* 259 (1982). In forcing those afflicted with milder asbestos-related diseases, or those who have merely been exposed to asbestosis, to sue within one year of their discoveries in order to stay within of the statute of limitations, "tens of thousands of these tort claims have been made successfully by individuals who are understandably worried about their exposure to asbestos, but who are not now and never will be afflicted by disease." Edley, Christopher F., Jr. and Paul C. Weiler, *Asbestos: A Multi–Billion–Dollar Crisis* 30 Harv. J. on Legis. 38 (1993).

Eleven years earlier, then-Circuit Court Judge Ruth Bader Ginsburg expressed the same idea against splitting causes of action in cases where only one suit is filed in a Court of Appeals of the District of Columbia case strikingly similar to this one, *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C.1982). In *Wilson*, the plaintiff, like Carroll, was diagnosed with asbestosis in 1983, but did not sue. In 1978, he was diagnosed with mesothelioma and his widow filed suit within the three-year statute of limitations. Justice Ginsburg said:

> Rules of res judicata (claim preclusion) and collateral estoppel (issue preclusion) concern the preclusive effects of former adjudication. Here there has been no former adjudication, no prior action resulted in a judgment to be given effect in a subsequent action.... This case requires us to focus, not on judgments or their preclusive effects, but on statutes of limitation and the policies they implicate in personal injury actions.... Upon diagnosis of an initial illness, such as asbestosis, the injured party may not need or desire judicial relief.... If no further disease ensues, the injured party would have no cause to litigate. However, if such a person is told that another, more serious disease may manifest itself later on, and that a remedy in court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court, for the consequence of a wait-and-see approach to the commencement of litigation may be too severe a risk.

*Id.* at 118.

In his article, *The Paradox of Statutes of Limitations in Toxic Substances Litigation*, 76 Calif. L.Rev. 965 (1988), Professor Michael D. Green discussed why statutes of limitations in toxic substance cases serve neither of the traditional functions of statutes of limitations—the preservation of evidence and peace of mind for potential defendants. Unlike traditional torts, those involving toxic substances include a cause of injury that is difficult to trace, a period of exposure which is longer and more varied, harms more susceptible to misdiagnosis, and a greater number of victims. While sharing Ginsburg, Edley, and Weiler's concerns that a plaintiff may feel compelled to rush to litigation on a flimsy case, Green argued that because of the latency of the diseases, statutes of limitations force plaintiffs to go to court before they have all the facts about their illness. Often the claimant must move forward before there has been a definitive diagnosis of likely injury from the exposure to asbestos.

When James Carroll was diagnosed with asbestosis in 1983, he should not have been obligated to predict cancer, nor should he be penalized for suing for the greater, more provable damage, rather than taking up judicial resources attempting to prove the ephemeral damages covered by "enhanced risk or fear of cancer." Because of the length of time between the diagnoses of these two diseases, it is possible that an asbestosis suit could have been filed and adjudicated before he ever knew he had cancer, leaving him no direct remedy for the more serious disease.

While purportedly relying on *Louisville Trust, supra*, the district court in this case ignored a crucial passage:

> Our own review of foreign authorities convinces us that this statement in Birnbaum's article in Forum is correct: "The clear trend, in most jurisdictions in cases dealing with drugs, chemicals and asbestos has been to apply some variation of the discovery rule which is based in equitable considerations. Courts have felt that the injured party should be allowed to have his day in court when his injury was of an inherently unknowable nature."

*Louisville Trust* at 501 (footnote, internal citations omitted).

James Carroll knew he had asbestosis and he knew the extent of that disease. This is not a case of medical malpractice, like *Farmer's Bank, supra*, where the disease remained the same, but its complete

nature was misdiagnosed. Even though the plaintiff in *Farmer's Bank* was not diagnosed with the correct type of cancer, she still received a cancer diagnosis and, furthermore, cancer is known to spread. Asbestosis does not necessarily progress to lung cancer. James Carroll's knowledge of asbestosis did not make his lung cancer anymore knowable or give him a reason to expect it.

Therefore, we hold that the action for cancer accrued on the date of the diagnosis of the cancer, not the diagnosis of asbestosis, which is a separate and distinct disease.

All concur.