NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0132n.06

Nos. 18-6028/19-5110

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PETER CANAVAN NEWBERRY, et al., | ) | **FILED** |
| | ) | Mar 05, 2020 |
| Plaintiffs-Appellants, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SERVICE EXPERTS HEATING & AIR | ) | COURT FOR THE EASTERN |
| CONDITIONING, LLC, et al., | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:     ROGERS, WHITE, and READLER, Circuit Judges.

ROGERS, Circuit Judge.  The district court in this diversity case applied Kentucky statutes of limitation to dismiss all the plaintiffs' state law claims against defendant Service Experts Heating & Air Conditioning, LLC ("SEHAC").  The claims arose out of the malfunction of, and failure to fix, water filtrations systems installed by defendant in plaintiffs' home.  The filtration systems malfunctioned from the very beginning, leading to the appearance of a black substance in plaintiffs' water.  An earlier suit was settled before any discovery took place; plaintiffs dismissed those claims without prejudice.  To the extent that plaintiffs seek recovery under various causes of action for personal injury and injury or trespass to property, the district court properly determined under Kentucky accrual rules that plaintiffs discovered the harms and the alleged causation more than five years (the longest relevant statutory period) before bringing the instant suit.  The district court also properly held that plaintiffs' breach of warranty and conversion claims were untimely.

However, to the extent that plaintiffs brought suit based on defendants' alleged failure to meet contractual obligations to remove the new system and restore the old system, plaintiffs' complaints plausibly allege contractual breaches within the relevant period. A remand is therefore necessary on those claims. Plaintiffs' various other contentions on appeal are without merit.

## I.

On December 7, 2011, plaintiffs Rorick and Newberry, who are married, made a call to SEHAC to repair their Aqua-Pure backwash water filter system. SEHAC responded that they did not service Aqua-Pure products, and offered instead to sell Rorick and Newberry two new water filtration units. The first was a TS+ 2000 Easy Water Toxin Shield backwash water filter manufactured by Freije Treatment Systems, Inc. The second was a Revita water filtration system for the kitchen. Rorick and Newberry agreed and purchased the products the same day. On December 19, 2011, plaintiffs informed SEHAC that both water filtration systems were not functioning properly. Plaintiffs complained to SEHAC that the water pressure in their home was low, that the systems leaked, and that the water had turned a "dirty blackish brown color." SEHAC came out the next day to inspect plaintiffs' water systems and found that the Easy Water Toxin Shield system had been installed "backwards," causing the water to turn a dark color. SEHAC claimed to have fixed the problem that day and advised plaintiff that they had taken a water sample for testing. However, ten days later on December 30, 2011, plaintiffs continued to report the presence of "blackish brown material that was also causing Plaintiffs' drains to drain slowly and back up."

Plaintiffs became "acutely concerned about the quality and safety of the water" and asked SEHAC repeatedly whether or not the water that was now passing through the filtration systems was safe to drink. SEHAC advised plaintiffs on January 2, 2012 that the water sample taken on

December 30, 2011 "tested fine." SEHAC did not provide a copy of the water test, but assured plaintiffs that the water was safe to drink.

Plaintiffs continued to experience difficulties with both water systems. On January 6, 2012, SEHAC could not get the Revita system to function properly and removed it from plaintiffs' kitchen. SEHAC also promised to remove the whole-house filtration system and reinstall plaintiffs' original Aqua-Pure system free of charge, upon request at any time during the first year of service. At an unspecified date thereafter, plaintiffs requested that SEHAC remove the whole-house system and replace it with the original Aqua-Pure system. In response, SEHAC told plaintiffs that it would submit insurance claims for the defective whole-house system. However, SEHAC never removed the system, nor did it return the Aqua-Pure system or provide monetary compensation.

After hearing no response from SEHAC, plaintiffs asked SEHAC on June 19, 2012 for copies of the insurance claims SEHAC purportedly submitted. On June 28, 2012, SEHAC's claims adjuster told plaintiffs that Lennox Industries, SEHAC's parent company, had submitted a claim to him and that he was investigating it. When plaintiffs expressed to the claims adjuster their dissatisfaction with how long it was taking to return their Aqua-Pure system, he informed plaintiffs that Lennox Industries was the proper party to sue for any claims. Finally, on January 24, 2013, SEHAC sent an email to plaintiffs stating that SEHAC was "unaware of any [insurance] claim" by plaintiffs.

Having grown weary of SEHAC's inaction, Newberry and Rorick each filed substantially similar civil actions against SEHAC and its parent companies Service Experts and Lennox Industries in Kentucky state court on March 22, 2013. Newberry, who is an attorney, represented himself in his lawsuit, while representing his wife in hers. Plaintiffs each brought claims for breach

of contract, breach of warranty, fraud, defamation, unjust enrichment, and "malice, oppression, or fraud." Newberry's complaint also included a claim for conversion.

Although plaintiffs' initial lawsuits focused on the defendants' refusal to refund their purchase and the damage done to plaintiffs' plumbing, the complaints also alleged adverse health consequences resulting from the improper installation of the whole-house filtration system. For example, as part of their fraud claim, plaintiffs alleged that they had "defective water systems which have caused multiple problems in [their] home, including, but not limited to, contamination of water, contamination of plumbing system of home, leakage, loss of water pressure, clogged drains, colored water, *and adverse health problems*." Further, plaintiffs alleged that "[a]s a result of Defendant SEHAC's fraudulent misrepresentations, Plaintiff *has suffered health problems after living in a home with dirty and questionable water* declared safe by Defendant SEHAC."

The defendants removed the cases to the United States District Court for the Eastern District of Kentucky on May 7, 2013. *See Newberry v. Service Experts Heating and Air Conditioning, et al.*, No. 2:13-cv-80-DLB-CJS (E.D. Ky. filed May 7, 2013); *Rorick v. Service Experts Heating and Air Conditioning, et al.*, No. 2:13-cv-81-WOB-CJS (E.D. Ky. filed May 7, 2013). Newberry voluntarily dismissed his case shortly thereafter on May 22, 2013. Rorick continued litigating her case, with Newberry as her attorney. During docket call before Judge Bertelsman on October 9, 2013, Newberry elaborated on the health problems his wife and pets were experiencing from water contamination:

| | |
|---|---|
| THE COURT: | Are you suing for more than the 75? |
| MR. NEWBERRY: | For more than the 75? |
| THE COURT: | More than the $75,000 in damages. |
| MR. NEWBERRY: | Yes, Your Honor. There are physical injuries also. Again, we don't know what was deposited into the drinking water – |
| THE COURT: | Personal injuries to the people? |

MR. NEWBERRY:    Yes, Your Honor.

. . .

MR. NEWBERRY:    Your Honor, we've been trying to get discovery as to what was put in the drinking water. That's the real linchpin of this case.

THE COURT:    It made people ill?

MR. NEWBERRY:    There are four dogs that drink water from the house watering system. They've all developed tumors since this. One cat has died. And the plaintiff has been diagnosed with blood clots.

   We have video of material and then brown material from these tanks going into our water system. And my attempts, through e-mails, as plaintiff's attorney, was to find out what is in there. And, in fact, one of the defendant's employees came to the home one day to take a water sample and actually took a water sample, put it in a jug, yet then left the home, leaving the jug behind, and then later reported –

THE COURT:    Well, if you've got a personal injury claim that your clients have tumors, is that in [the complaint]?

MR. NEWBERRY:    No, Your Honor. This is all -- again, those are dogs. Those are dogs. My wife just developed the blood clot. She just –

THE COURT:    Well, you have to have medical testimony.

MR. NEWBERRY:    Yes, Your Honor, we probably will, if it's related.

THE COURT:    You can amend at a later date.

MR. NEWBERRY:    But it would be helpful if we knew the chemicals or the materials that were deposited into our water. Defendant has that information.

During the hearing, the district judge set a discovery schedule and dispositive motion deadline. One month later on November 13, 2013, the parties indicated they had reached a settlement and filed an agreed order of dismissal. The agreed order stated that Rorick would dismiss her case without prejudice subject to the condition that any subsequent lawsuit stemming from the parties' dispute would have to be filed in the "Covington Division" of the Eastern District of Kentucky.

Newberry and Rorick indeed filed two subsequent actions on March 16, 2017, this time in Lexington, which is in the Central Division of the Eastern District of Kentucky. *Newberry v. Service Experts Heating & Air Conditioning, LLC, et al.*, No. 5:17-cv-131-JMH (E.D. Ky. filed Mar. 16, 2017); *Rorick v. Service Experts Heating & Air Conditioning, LLC, et al.*, No. 5:17-cv-132-JMH (E.D. Ky. filed Mar. 16, 2017). Plaintiffs brought many of the same claims as in their prior actions, as well as new claims for personal injury, injury to real and personal property, and products liability.[1] Plaintiffs allege that in 2015, three of their dogs and one of their cats died of cancer. They further allege that in the fall of 2015, Rorick began suffering from recurring migraine headaches. Another one of plaintiffs' dogs was diagnosed with cancer in February 2016 and is still undergoing treatment.

The complaint states that on February 26, 2016, plaintiffs submitted a water sample from their home to ALS Environmental Laboratories. The tests revealed "that the household water supply had been contaminated with known carcinogenic compounds at dangerously high levels." Since the results of the water test, two more of plaintiffs' dogs were diagnosed with cancer, one of which died.

Plaintiffs allege that the contaminated water in their home was a direct and proximate result of SEHAC's negligent installation of the whole-house water filtration system. Furthermore, they allege that SEHAC knew or should have known of the risks that plaintiffs faced but failed to warn plaintiffs, and worse, "repeatedly advised and assured" plaintiffs that the drinking water in their home was safe.

Plaintiffs explain in their new complaints that Rorick voluntarily dismissed her initial lawsuit based on representations made by defendants' attorney that "there was no present evidence

---

[1] The products liability claim is against Freije Treatment Systems, Inc., which is not a party to this appeal.

of physical injury" to plaintiffs and that SEHAC had tested the water from plaintiffs' home and found it to be safe. Plaintiffs contend that they "relied upon Defendant SEHAC's repeated representations that the water had been tested by Defendant."

Defendants SEHAC, Service Experts, and Lennox all filed motions to dismiss. In three separate orders issued in March 2018, April 2018, and January 2019, the district court granted the motions and dismissed all claims against these defendants. The district court first dismissed all claims against Service Experts and Lennox, neither of which was accused of wrongdoing and whose only connection to the dispute was as parent companies to SEHAC. The district court also dismissed ten out of eleven claims against SEHAC as time-barred, for the following reasons.

The district determined that plaintiffs' claims for negligence (count four) and negligent failure to warn (count two) accrued in October 2013, when plaintiffs made statements at a hearing before Judge Bertelsman demonstrating their knowledge of water contamination in their home and its resulting negative health effects. This was more than three years before plaintiffs filed their second round of complaints in March 2017. Accordingly, these claims, which carry one-year and two-year statutes of limitation respectively, were time-barred. The court held that plaintiffs' claims for "contamination of water" (count three) and fraud (counts five and twelve)—both governed by five-year statutes of limitation—were also time-barred because they accrued in December 2011. In support of its holding, the court pointed to plaintiffs' complaints from the first round of litigation, which alleged that SEHAC made false statements about their household water quality as early as December 20, 2011. Plaintiffs' complaints from the earlier litigation also made clear that they knew of water contamination by December 2011.

The court next rejected plaintiffs' argument that the doctrine of equitable estoppel prevented defendants from invoking the statute of limitations defense. According to the district

court, plaintiffs did not act reasonably in relying on defendants' alleged misrepresentations and failed to actively investigate their claims despite having had reason to do so.

The district court also dismissed plaintiffs' claims for contract fraud (count seven), breach of contract (count eight), and unjust enrichment (count nine). Each of these claims originated from SEHAC's alleged violation of its oral contract with plaintiffs, under which it had agreed to properly install, service, and replace plaintiffs' water filtration systems. The district court reasoned that because plaintiffs in their 2013 complaints had failed to allege conduct relating to these claims after January 6, 2012, they effectively conceded that these claims accrued on or before that date. As the longest limitations period for any of these claims is five years, and January 6, 2012 is more than five years before plaintiffs filed their 2017 complaints, their claims were held to be untimely. Plaintiffs' breach of warranty claim (count six) was also deemed untimely under that statute's four-year limitations period. The court observed that a Kentucky breach of warranty claim accrues "when tender of delivery is made." As SEHAC installed the water filtration system in plaintiffs' home more than four years before March 2017, the breach of warranty claim was time-barred. Plaintiffs' conversion claim, which plaintiffs admitted had accrued on January 24, 2013, was likewise time-barred under the applicable two-year statute of limitations. Finally, the court construed the remaining claim against SEHAC for "malice, oppression and fraud" as a request for punitive damages and dismissed it in light of its dismissal of the other claims against SEHAC.

In June and August 2018, after most (although not all) of their claims had been dismissed, Newberry and Rorick moved to transfer their cases to the Northern Division of the Eastern District of Kentucky. They argued that the court in the Central Division lacked subject-matter and personal jurisdiction pursuant to the agreed order of dismissal in the prior case, which stated that "subsequent law suits must be re-filed in the United States District Court for the Eastern District

of Kentucky, Covington Division." The district court denied the motions to transfer. Plaintiffs have timely appealed the judgments dismissing their claims and the order denying their transfer motions. We consolidated the cases for purposes of appeal.

In Newberry's appeal brief, he states that he was diagnosed with an illness on November 1, 2018, one month after he appealed the district court's orders. He alludes to the fact that this illness made him more susceptible to believing defendants' allegedly fraudulent statements, and asks the court of appeals to "remand for an evidentiary hearing on facts of Appellant's recently diagnosed illness."

## II.

On appeal, plaintiffs have raised a number of challenges to the district court's rulings. All lack merit except for the argument that, according to the complaint, the oral contract to repair or replace the filtration system was first breached less than five years before the instant suit was brought.

### A. Parent Company Liability

The district court correctly dismissed all claims against SEHAC's parent companies Service Experts and Lennox. Plaintiffs have not alleged that Service Experts or Lennox injured them directly. Instead, they seek to hold those companies responsible for SEHAC's alleged misconduct because of their statuses as SEHAC's parent companies. However, under Kentucky law, "mere ownership and control of a corporation by the persons sought to be held liable is not alone a sufficient basis for denial of entity treatment." *White v. Winchester Land Dev. Corp.*, 584 S.W.2d 56, 61 (Ky. 1979), *overruled on other grounds by Inter-Tel Techs, Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152 (Ky. 2012). Plaintiffs have not alleged sufficient facts to pierce the corporate veil in this case and thus may not recover against Service Experts and Lennox.

### B. Negligence and Negligent Failure to Warn (counts two and four)

The district court properly dismissed plaintiffs' claims for negligent failure to warn (count two) and negligence (count four) on statute-of-limitations grounds. In their negligent-failure-to-warn claim, plaintiffs allege that SEHAC knew or should have known that the whole-house filtration system was improperly installed and could harm plaintiffs and their property. In their general negligence claim, plaintiffs allege that SEHAC breached its duty to properly install the water systems in a manner that would provide a safe, potable water supply. Plaintiffs further allege that SEHAC breached its duty to remedy unsafe conditions created by the improper installation.

For purposes of analysis, the district court determined that the negligent-failure-to-warn claim would be governed by the two-year statute of limitations for damage to personal property, Ky. Rev. Stat. § 413.125, and the general negligence claim would be subject to the one-year statute of limitations for personal injury, Ky. Rev. Stat. § 413.140(1)(a). The parties appear to agree on this much, but contest when the claims accrued under these statutes.

Under normal circumstances, a claim accrues at the time the defendant's conduct "causes injury that produces loss or damage." *Abel v. Austin*, 411 S.W.3d 728, 736 (Ky. 2013) (quoting *Alagia, Day, Trautwein & Smith v. Broadbent*¸ 882 S.W.2d 121, 126 (Ky. 1994)). At plaintiffs' urging, however, the district court applied what is known as the "discovery rule," which tolls the statute of limitations until the plaintiff discovers—or in the exercise of reasonable diligence should have discovered—the fact of injury and that injury may have been caused by the defendant's conduct. *See Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010). According to plaintiffs, they did not discover that their water had been contaminated until March 18, 2016, when they received the results of a water sample revealing high levels of carcinogens in their household water supply.

However, as the district court and the defendants point out, the record contradicts plaintiffs' account and reveals that plaintiffs knew or reasonably should have known more than five years before these suits were brought in March 2017 that there was injury to their person and property from water in their home that was contaminated and constituted a health hazard as a result of SEHAC's actions.[2]  First, in their complaints filed on March 22, 2013, plaintiffs alleged that as a result of defendants' conduct, their water "had turned a dirty brown color, and that because of SEHAC's "fraudulent misrepresentations," there was "contamination of water" in plaintiffs' home which had led to "adverse health problems."  The complaints further alleged that "[a]s a result of Defendant SEHAC's fraudulent misrepresentations, Plaintiff has suffered health problems after living in a home with dirty and questionable water declared safe by Defendant SEHAC."

Plaintiffs elaborated on these allegations at the October 9, 2013 hearing.  At the hearing, Newberry told the court that five of his family's pets had developed cancer, and that Rorick had been diagnosed with blood clots.  Newberry also suggested at the hearing that contaminated water was the cause of these health problems:

| THE COURT: | Are you suing for more than the 75? |
|---|---|
| MR. NEWBERRY: | For more than the 75? |
| THE COURT: | More than the $75,000 in damages. |
| MR. NEWBERRY: | Yes, Your Honor. *There are physical injuries also. Again, we don't know what was deposited into the drinking water –* |
| THE COURT: | *Personal injuries to the people?* |
| MR. NEWBERRY: | *Yes, Your Honor.* |
| . . . | |

---

[2] Plaintiffs have not objected to reliance by the district court on factual allegations and statements made by plaintiffs in the prior litigation.  We do not address how we would resolve a properly preserved objection to that reliance.  In general, we may consider records from a prior case when the district court relied on them and when plaintiffs have had an opportunity to challenge their factual content.  *See Stafford v. Jewelers Mut. Ins. Co.*, 554 F. App'x 360, 369 (6th Cir. 2014); *see also Green Mt. Realty Corp. v. Leonard*, 750 F.3d 30, 36 n.2 (1st Cir. 2014); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978).

| MR. NEWBERRY: | Your Honor, we've been trying to get discovery as to *what was put in the drinking water. That's the real linchpin of this case.* |
|---|---|
| THE COURT: | *It made people ill?* |
| MR. NEWBERRY: | There are four dogs that drink water from the house watering system. They've all developed tumors since this. One cat has died. *And the plaintiff has been diagnosed with blood clots. We have video of material and then brown material from these tanks going into our water system.* And my attempts, through e-mails, as plaintiff's attorney, was to *find out what is in there*. |

(emphasis added).

Despite having made these statements in October 2013, plaintiffs assert in their complaints that at the time Rorick voluntarily dismissed her case in November 2013, "there was no evidence of physical injury nor any established reason to suspect future harm to health or safety from the water in Plaintiff's home." Plaintiffs similarly contend on appeal that "there was no reasonable reason to suspect any harm from the continuing use of the water passing through the Toxin Shield filtration system until the culmination of a series of events that began in 2015." We have previously rejected, in the federal securities law context, a plaintiff's attempt to invoke a discovery rule where its statements in prior litigation showed awareness of a legally cognizable injury before the expiration of the statute of limitations. *See New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501-02 (6th Cir. 2003). This case is no different. Even applying the discovery rule, plaintiffs' negligence claims are still untimely.

Plaintiffs attempt to contextualize Newberry's statements at the October 2013 hearing, emphasizing that plaintiffs had yet to determine with certainty whether defendants were responsible for their injuries. But the discovery rule does not continue to toll the statute of limitations until a plaintiff is certain of who has wronged him. Rather, as the district court correctly observed, "once the Plaintiff encounters facts that 'should excite his suspicion,' he effectively has

'actual knowledge of th[e] entire claim.'" *Newberry v. Service Experts Heating & Air Conditioning*, LLC, No. 5:17-cv-131, 2018 WL 1701316, at *5 (E.D. Ky. Apr. 5, 2018) (quoting *Fluke Corp.*, 306 S.W.3d at 64). Plaintiffs' statements during the prior litigation clearly demonstrate that they suspected contaminated water was causing health problems and that SEHAC was to blame.

Even assuming plaintiffs lacked actual knowledge of their injury and its cause in 2013, their constructive knowledge was sufficient. "Under the discovery rule, it is the date of the actual or constructive knowledge of the injury which triggers the running of the statute of limitations." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000) (citation omitted). A plaintiff who is presented with sufficient indicia of a potential cause of injury must engage in a "prompt, independent investigation" of the source of the injury. *See Fluke Corp.*, 306 S.W.3d at 61. The record demonstrates that plaintiffs had enough information by October 9, 2013 to warrant their own "prompt, independent investigation" of their household water quality. Had they engaged in reasonable diligence, they would have discovered the causal connection between their injuries and SEHAC's faulty installation of their filtration system by October 9, 2013 at the latest. Given that plaintiffs filed their new complaints more than three years after this date, their claims for negligent failure to warn and negligence—which carry one-year and two-year statutes of limitation respectively—are time-barred.

### C. Contamination of Water (count three)

Rorick and Newberry's claims for contamination of water (count three) are likewise barred by the applicable statute of limitations. The district court correctly determined—and the parties agreed—that a claim for "contamination of water" is properly viewed as one for trespass to real

property, which carries a five-year statute of limitations. Ky. Rev. Stat. § 413.120(4); *see Ray v. Ashland Oil*, 389 S.W.3d 140, 148 (Ky. Ct. App. 2012).

The discovery rule does not apply to plaintiffs' trespass claims because the rule is employed only for latent injuries. *Fluke Corp.*, 306 S.W.3d at 60. Unlike the illnesses that affected plaintiffs and their pets, the contamination of plaintiffs' water was not a latent injury. The water noticeably contained "blackish brown materials" on December 19, 2011, and plaintiffs' trespass claim accrued on that date. For purposes of the trespass claim, it does not matter that plaintiffs failed to comprehend the seriousness of the contamination at that point in time. A plaintiff's "lack of knowledge of the extent of his injury does not toll a statute of limitation to which the discovery rule is applied." *Carroll v. Owens-Corning Fiberglas Corp.*, 37 S.W.3d 699, 700 (Ky. 2000) (quoting *Louisville Trust Co. v. Johns-Manville Prods. Co.*, 580 S.W.2d 497, 500 (Ky. 1979)). Having accrued on December 19, 2011, plaintiffs' "contamination of water" claims brought on March 16, 2017 are untimely under Kentucky's five-year statute of limitations for trespass to real property.

### D. Fraud (counts five and twelve)

Plaintiffs' fraud claims in counts five and twelve of the complaints are also time-barred because they accrued more than five years before the filing of the 2017 complaints. These claims refer to statements SEHAC allegedly made on December 30, 2011 and January 2, 2012, as well as during the first round of litigation, that the water in plaintiffs' home was tested and that it was safe to drink. In Kentucky, fraud actions are subject to a five-year limitations period, which begins to run "when a plaintiff could have discovered the fraud in the exercise of reasonable diligence." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 259 (6th Cir. 2012); *see* Ky. Rev. Stat. §§ 413.120(11); 413.130(3); *Madison Cty. v. Arnett*, 360 S.W.2d 208, 210 (Ky. 1962).

Plaintiffs argue that they did not know SEHAC was misrepresenting the safety of the water until they tested the water themselves in 2016. As discussed above, however, plaintiffs certainly had reason to suspect SEHAC's alleged fraud by March 22, 2013, when they averred in their complaints that "[a]s a result of Defendant SEHAC's fraudulent misrepresentations, Plaintiff has suffered health problems after living in a home with dirty and questionable water declared safe by Defendant SEHAC."

Furthermore, the record demonstrates that plaintiffs, had they exercised reasonable diligence, would have discovered the alleged fraud no later than January 2012. Under Kentucky law, a plaintiff has "a duty to exercise reasonable diligence to discover [his] cause of action within the time prescribed by the statute of limitations." *Bridgefield Cas. Ins. Co. v. Yamaha Motor Mfg. Corp. of Am.*, 385 S.W.3d 430, 434 (Ky. Ct. App. 2012). The duty to investigate arises "on notice that something [is] amiss," *Victory Cmty. Bank v. Socol*, 524 S.W.3d 24, 29 (Ky. Ct. App. 2017), and a plaintiff's failure to do so precludes application of the discovery rule. *See Bridgefield Cas. Ins. Co.*, 385 S.W.3d at 434. Plaintiffs continued seeing "blackish brown materials" in their water after SEHAC told them their water was safe on December 30, 2011. In addition, plaintiffs had reason to doubt the veracity of SEHAC's employees, one of whom told Newberry that he had taken a water sample on December 20, 2011 even though Newberry saw that "he [had] left the water sample in the jug on the Plaintiff's kitchen counter" that same day. Taken together, these facts indicate that plaintiffs were "on notice that something was amiss" and should have further investigated.

### E. Equitable Estoppel

Plaintiffs propose the defense of equitable estoppel to combat SEHAC's statute-of-limitations arguments. "An estoppel may arise to prevent a party from relying on a statute of

limitation by virtue of a false representation or fraudulent concealment." *Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992) (citation omitted). It is not clear to which claims plaintiffs ask the court to apply this defense, but it appears that it applies most logically to the claims discussed up to this point that deal with contamination of plaintiffs' water. Contrary to plaintiffs' contention, the defendants are not equitably estopped from relying on the statute-of-limitations defense because SEHAC's alleged misrepresentations did not prevent plaintiffs from discovering the water contamination on their own.

Plaintiffs have not alleged how SEHAC's misrepresentations about the quality of the water in their home prevented them from finding out about the water contamination or otherwise diligently pursuing their claims during the statutory period. Plaintiffs had complete control of and access to their allegedly faulty filtration system and could have conducted their own water tests at any time after they noticed water contamination starting in 2011. Moreover, as the district court observed, plaintiffs were given a full opportunity to conduct discovery in the initial Rorick action in October 2013 but chose instead to reach a settlement with the defendants. In short, although plaintiffs assert that they lacked knowledge of the water contamination as a result of SEHAC's fraudulent statements, they do not allege that they lacked the means of acquiring this knowledge. It follows that, even if plaintiffs could demonstrate that they actually relied on SEHAC's alleged misrepresentations, that reliance would not have been reasonable, and equitable estoppel would not apply.

Kentucky law requires this conclusion. Plaintiffs must show (1) that they lacked the "means of acquiring knowledge of the truth" about the defendant's misconduct, (2) that they reasonably relied on the defendant's misrepresentations, and (3) that they failed to timely sue

because of these misrepresentations. *See Fluke Corp.*, 306 S.W.3d at 62; *Boggs v. 3M Co.*, No. 11-57-ART, 2012 WL 3644967, at *6-7 (E.D. Ky. Aug. 24, 2012) (applying *Fluke Corp.*).

The equitable estoppel doctrine is "reserved for truly exceptional circumstances," and does not relieve a plaintiff of his obligation "to act diligently to investigate apparent possible causes of [his] injuries in order to pursue claims within the statute of limitations." *Fluke Corp.*, 306 S.W.3d at 67. Accordingly, Kentucky decisions applying equitable estoppel "appear to require 'some act or conduct which in point of fact misleads or deceives plaintiff *and obstructs or prevents him from instituting his suit while he may do so.*" *Munday*, 831 S.W.2d at 914 (emphasis added) (quoting *Adams v. Ison*, 249 S.W.2d 791, 792 (Ky. 1952)). For instance, in *Fluke Corp.*, where the plaintiffs argued that they were unaware of their products liability claim due to the defendants' failure to disclose certain product defects, the court held that there was no estoppel because plaintiffs could not show that they "lacked the means of acquiring knowledge of the truth that the [product] could have malfunctioned, which would render any actual reliance reasonable." 306 S.W.3d at 62. Likewise in *Cantrell v. Ashland Oil, Inc.*, the Kentucky Supreme Court held that equitable estoppel did not apply to an untimely lawsuit alleging water contamination. Nos. 2006-SC-763-DG, 2007-SC-818-DO, 2010 WL 1006391, at *11 (Ky. Mar. 18, 2010). Although the defendant in *Cantrell* had misrepresented the fact that a chemical in plaintiffs' groundwater was harmless, plaintiffs could not "demonstrate that [defendant] prevented them from discovering the damage to their ground water." *Id.* (citing *Weiand v. Bd. of Trs. of Ky. Ret. Sys.*, 25 S.W.3d 88, 91 (Ky. 2000)).

**F. Fraud, Breach of Contract, and Unjust Enrichment (counts seven, eight, and nine)**

Unlike their tort claims relating to water contamination, plaintiffs' claims for breach of oral contract (and related claims of unjust enrichment and contract fraud) have not been shown to be time-barred under the applicable five-year statutes of limitation. Plaintiffs allege that they entered

into an oral contract with SEHAC to "properly install, service, and/or repair the whole house toxin shield water filtration system." They further allege that this contract was entered into on December 12, 2011 and included a one-year obligation to service the filtration system.

On appeal, plaintiffs' statute-of-limitations arguments focus solely on an alleged term of the oral contract that defendants were required "to remove either or both of [the] water filtration systems and to reinstall Plaintiff's Aqua-Pure system for no additional charge in the event that Plaintiff was dissatisfied with the systems that were purchased from [defendants] 'at any time during the first year of service upon request by Plaintiff.'" This oral contractual provision is also the basis for one of plaintiffs' fraud claims (count seven) and for plaintiffs' unjust enrichment claim (count nine). Plaintiffs assert that SEHAC's fraudulent statements induced them to enter into the oral contract. Plaintiffs also allege that their payment of $3,200 under the contract conferred a benefit to SEHAC and that SEHAC's retention of that benefit was unjust given its failure to perform.

Both parties assume the existence of an oral contract and agree that each of these three claims is governed by a five-year statute of limitations. *See* Ky. Rev. Stat. §§ 413.120(1), 413.120(11); *EQT Prod. Co. v. Big Sandy Co., LP*, 590 S.W.3d 275, 287 (Ky. Ct. App. 2019) (applying five-year statute-of-limitations period in Ky. Rev. Stat. § 413.120(11) to unjust enrichment claims). The parties also appear to agree that the claims accrued either when defendants allegedly breached the obligation or when the obligation was repudiated. This appears to be the law at least with respect to suits for breach of contract. *EQT Prod. Co.*, 590 S.W.3d at 292 (citing *Hoskins Adm'r v. Kentucky Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky. 1957)); *Berger v. Savient Pharms., Inc.*, No. 2009-CA-1858-MR, 2011 WL 4861427, at *4 (Ky. Ct. App. Oct. 14,

2011) (citing *Upton v. Ginn*, 231 S.W.3d 788, 791 (Ky. Ct. App. 2007)). The parties make identical statute-of-limitations arguments with respect to the three claims.

Plaintiffs argue that SEHAC disavowed its obligation on January 24, 2013, less than five years before suit was brought on March 16, 2017. But even so, if there were an earlier breach, in particular one before March 2012, the three claims would be untimely. Plaintiffs argue in effect that there was no breach until December 12, 2012, the date by which plaintiff was required to request the replacement of the new system with the old one. But that argument does not make clear why there was no breach before that time. The contractual provision described in the complaint could be read to require replacement of the old system within a reasonable time of a valid request, and not whenever SEHAC felt like it until the end of the year.

On the other side, SEHAC's only limitations argument for these claims is that plaintiffs' "breach of contract claim must obviously have accrued by [January 6, 2012] in order to have been asserted in the Newberry Prior Action, but that accrual was more than five years before the filing of this action"[3] It is not obvious from the earlier complaint, however, that the claim must have accrued by January 6, 2012. According to both the earlier and later complaints, that date is when SEHAC allegedly reiterated its promise contained in the December 12, 2011 oral contract. Neither complaint states that a request to replace the filtration system was made on that date, much less that SEHAC breached or repudiated on that date. The allegation in both complaints that plaintiff asked for removal of the new system and reinstallation of the old system is simply undated. Similarly undated is the subsequent paragraph stating that SEHAC never returned to remove the new system or reinstate the older one.

---

[3] The argument appears to be based on the district court's statement that these were claims which "were asserted in the earlier action and which relied upon actions taken at the latest on January 6, 2012, according to the Newberry Prior Complaint." *Newberry*, 2018 WL 1701316, at *6. The district court did not further elaborate on why these claims were time-barred, other than to set out, and provide citations for, the relevant limitations periods. *Id.*

It is thus unclear whether the alleged oral agreement to remove and replace was breached before or after March 16, 2012, and thus whether the contract, contract fraud, and unjust enrichment claims (counts seven through nine) were time-barred. The statute of limitations is an affirmative defense which the defendant has the burden to demonstrate. *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013). Further, the allegations in the complaint must "affirmatively show that the claim is time-barred" for a motion to dismiss to be granted. *Id.* (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). Without more, on the current record, it was premature to dismiss on limitations grounds the three claims based on the alleged contractual obligation to remove and replace upon request.

SEHAC argues in the alternative that plaintiffs fail to allege their fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b) because plaintiffs do not allege the identity of the individual who made the alleged fraudulent statements. SEHAC is correct that our caselaw has required that a plaintiff "identify the speaker." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). SEHAC is also correct that Newberry and Rorick allege only that the "employee and/or agent of Defendant SEHAC" made fraudulent statements. However, we have also observed that the identity of the speaker is necessary only to "enable a particular defendant to determine with what it is charged." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 507 (6th Cir. 2007) (quoting *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992)). Thus, while a plaintiff's complaint that refers only to "defendants" is insufficient under Rule 9(b), *see Cataldo*, 676 F.3d at 551-52 (collecting cases), a complaint that identifies a particular corporate defendant as well as the "time, place, and content of the alleged misrepresentation" need not also identify the corporation's individual employee who made the

alleged fraudulent misrepresentation. *Bledsoe*, 501 F.3d at 506. As shown below, the allegation in plaintiffs' complaints fits these criteria:

> On January 6, 2012, the Revita water filtration system for the kitchen was removed by Defendant SEHAC after it was unable to get it to work properly. Defendant SEHAC reiterated its earlier promise to remove its systems and reinstall Plaintiff's Aqua-Pure system for no charge at any time during the first year of service upon request by Plaintiff for any reason whatsoever.

Accordingly, plaintiffs have alleged their contract fraud claim in count seven with sufficient particularity.

### G. Breach of Warranty (count six)

The district court correctly ruled that plaintiffs' breach of warranty claims are time-barred. Kentucky law provides that a buyer may assert a breach of warranty action within four years of "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Ky. Rev. Stat. § 355.2-725(2). Plaintiffs concede that their breach of warranty claims accrued on January 24, 2013 at the latest, which is more than four years before their new complaints were filed.

### H. Conversion (count ten)

Plaintiffs' claims for conversion can also be easily disposed of, as plaintiffs' new complaints were filed long after the expiration of the two-year statute of limitations. Plaintiffs contend—without citation to authority—that a five-year limitation period applies instead. This contention contradicts the consensus among courts that conversion claims in Kentucky are governed by Kentucky Revised Code § 413.125, which establishes a two-year statute of limitations for "[a]n action for the taking, detaining or injuring of personal property, including an action for specific recovery." *See Weatherly v. Hospice of Lake Cumberland, Inc.*, No. 2018-CA-248-MR,

2019 WL 1422848, at \*2-3 (Ky. Ct. App. Mar. 29, 2019); *see also Madison Capital Co., LLC v. S & S Salvage, LLC*, 507 F. App'x 528, 540 (6th Cir. 2012); *Jair United Inc. v. Inertial Airline Servs., Inc.*, No. 3:12-cv-799-H, 2013 WL 4048539, at \*4 (W.D. Ky. Aug. 9, 2013). Plaintiffs' complaints state that on June 19, 2012, plaintiffs asked SEHAC to return their "missing Aqua-Pure filter system which Defendant Removed from Plaintiff's home without Plaintiff's knowledge or consent." The conversion claims were therefore at least four years old at the time plaintiffs filed their new complaints, making them over two years late.

## I. Motions to Transfer

Plaintiffs argue on appeal, as they did below, that their cases must be transferred pursuant to the terms of the agreed order of dismissal in the 2013 Rorick lawsuit. That order provides that any subsequent lawsuit stemming from the 2013 dispute between Rorick and defendants "must be re-filed in the Untied States District Court for the Eastern District of Kentucky, Covington Division."[4] Plaintiffs take this to mean that "*only* the Covington Division of the Eastern District of Kentucky possesses both subject matter and personal jurisdiction over this case and the named parties."

Having carefully considered the record on appeal and the briefs of the parties, we are not persuaded that the district court abused its discretion when it denied plaintiffs' motions to transfer their cases from the Central Division to the Northern Division of the Eastern District of Kentucky. *See Newberry v. Service Experts Heating & Air Conditioning LLC*, No. 5:17-cv-131, 2018 WL 4101508 (E.D. Ky. Aug. 28, 2018); *Rorick v. Service Experts Heating & Air Conditioning, LLC*, No. 5:17-cv-132, 2018 WL 4495467 (E.D. Ky. Sept. 19, 2018). Because the district court fully

---

[4] The agreement's use of the term "Covington Division" likely refers to the Northern Division, which encompasses both the Ashland and Covington dockets. *See* Rule 3.1(a) of the Joint Local Rules for the Eastern District and Western District of Kentucky.

articulated the reasons why transfer was improper, a detailed opinion by this court would be duplicative and serve no useful purpose. Accordingly, we adopt the analysis and conclusions of the district court and affirm its orders denying plaintiffs' motions to transfer.

### J. Motion to Continue

In addition, Rorick complains that the district court abused its discretion by denying her third motion for extension of time to (1) respond to defendants' motion to dismiss and (2) to retain new counsel. Rorick's argument lacks merit. The record reveals that the district court granted two separate motions for extension of time, giving Rorick a total of six additional weeks to find counsel and respond to defendants' motion. The district court appears to have struck a balance between Rorick's desire to be accommodated and its need to process cases in a timely manner. Thus, the district court's actions do not leave a "definite and firm conviction" that it committed a clear error of judgment. *See Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003) (quoting *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578-79 (6th Cir. 1998)). The district court did not abuse its discretion by denying Rorick's motion for yet another extension of time.

Rorick also contends that the district court abused its discretion by considering the defendants' motion to dismiss without the benefit of her response brief, which was filed within the time permitted under the rules for pro se litigants. This argument is also unavailing. The issues the court decided in the motion to dismiss Rorick's complaint had already been briefed by both parties in the parallel Newberry action. *See Newberry*, 2018 WL 1701316 (E.D. Ky. Apr. 5, 2018). Further, Rorick's "response," once it was filed, did not add anything to the already briefed arguments, as it consisted merely of a two-paragraph statement lacking any citation to authority. Therefore, any error (if there was one) was harmless and does not constitute a ground for "vacating, modifying, or otherwise disturbing" the district court's judgment. Fed. R. Civ. P. 61.

**K. Request for Remand and Evidentiary Hearing**

Finally, we decline to require, as suggested in Newberry's appeal brief, a hearing based on his statement that he was diagnosed with an illness on November 1, 2018, one month after he appealed the district court's orders. Newberry alludes to the fact that this illness made him more susceptible to believing defendants' allegedly fraudulent statements and asks the court of appeals to "remand for an evidentiary hearing on facts of Appellant's recently diagnosed illness." Newberry has not demonstrated how his illness would affect the merits of his claims at this stage of the litigation. For purposes of a motion to dismiss, his assertions that he actually relied on defendants' fraudulent statements are taken as true. In addition, the test for whether Newberry should have been aware of his claims for statute-of-limitations purposes is objective, not subjective. *See Greywolf v. Roman Catholic Diocese of Covington*, No. 2010-CA-814-MR, 2011 WL 3361342, at *3 (Ky. Ct. App. Aug. 5, 2011) (citing *Adams*, 249 S.W.2d at 793). Nor has Newberry suggested that his illness caused him to have an unsound mind that tolled the statute of limitations under Kentucky Revised Statute § 413.170(1). Of course, Newberry is permitted to provide evidence of his mental state on remand to the extent he feels it helps his case.

**III.**

For these reasons, we reverse the district court's judgment dismissing plaintiffs' claims for fraud (count seven), breach of contract (count eight), and unjust enrichment (count nine), and remand for further consideration in light of this opinion. We affirm all other aspects of the district court's judgment.